## COMMERCIAL STANDARD INS. CO. v. NOACK.

### No. 3690.

Court of Civil Appeals of Texas. Amarillo.
Nov. 16, 1931.

Rehearing Denied Jan. 20, 1932.

Touchstone, Wight, Gormley & Price and D. A. Frank, all of Dallas, and B. P. Maddox, of Tahoka, for appellant.

R. A. Baldwin, of Slaton, for appellees.

HALL, C. J.

The appellant insurance company instituted this suit to set aside the award of the Industrial Accident Board which had been rendered in favor of appellee, Noack. Noack had filed a claim for damages on account of injuries sustained by him on February 15, 1930, while employed as an automobile mechanic at Tahoka, Tex.

Noack filed an answer and cross-action in which he sought compensation for total and permanent disability, alleging that on February 15, 1930, while working as a mechanic for Snowden Chevrolet Company, he had inhaled carbon monoxide while working under an au-

tomobile, which had resulted in total and permanent disability; that the gas had been taken into his lungs, penetrated his body, and resulted in serious injury to his heart. He prayed for compensation in a lump sum.

The case was submitted to a jury, who found: (1) That he was injured on the 15th day of February, 1930, in the course of his employment; (2) that his injuries resulted in total incapacity; (3) that such incapacity was permanent; and (4) that he should recover in a lump sum.

The jury failed to answer special issue No. 3 requested by plaintiff, which is as follows: "Was the defendant Alexander Noack, suffering from mitral regurgitation of the heart on and immediately prior to February 15, 1930?"

In answer to special issue No. 1, requested by the defendant, the jury further found that breathing such gas by Noack contributed with the diseased condition of his heart in causing his present disability.

Based upon the verdict, the court rendered judgment in appellee's favor for matured compensation of 56 weeks at $17.31 per week and accrued interest thereon, aggregating $1,001, and for the remaining 345 weeks of unmatured compensation rendered a lump sum judgment with 6 per cent. discount, adjudging one-third of the recovery to the appellee's attorney.

It appears that, because no testimony had been presented showing what would have been a reasonable rate of discount in computing the lump sum, appellee and his attorney filed a remittitur in the trial court of the judgment in so far as it decreed the rate of discount and required the unmatured installments, after discount, to be paid in a lump sum.

The first matter to be considered is appellee's motion to strike the statement of facts because part of the statement is in narrative form and part in question and answer form.

The statement of facts was filed June 4, 1931. The Forty-Second Legislature passed two acts amending R. S. art. 2239. The first act, being chapter 63, page 97, of the General Laws of the Forty-Second Legislature, was approved April 21, 1931, and the bench and bar of Texas generally understood at the time of its approval that the law had become effective immediately, which provided that a statement of facts might be prepared in either narrative or question and answer form. The note by the secretary of state appended to the act (page 98) shows that the bill passed the Senate by a viva voce vote, but whether by majority of two-thirds vote does not appear, and under the Constitution, art. 3, § 39, it could not become effective until ninety days after adjournment, or until August 21, 1931. However, at the same session, H. B. No. 120, being chapter 135, page 228, of the Acts of the

same Legislature, and which also provides that a statement of facts may be either in narrative or question and answer form, was approved by the Governor May 18, 1931, and the secretary of state's note appended to the act shows that it passed both the House and the Senate by the requisite vote to put it into immediate effect.

In the case of Missouri, K. & T. Ry. Co. v. Waggoner, 102 Tex. 260, 115 S. W. 1172, 1173, where the acts of 1905 and 1907 were under consideration and where it was sought to strike the statement of facts because it did not comply with the requirements of the last act, the court said: "Statutes regulating such procedure are directory, and rights are not always to be lost by the failure to follow them. The provision of the act of 1907, intended to secure the condensation of statements of facts, is an important one, and a disregard of it ought generally to be held to be a just reason for refusing to consider the statement, but such a consequence might operate too severely if applied in cases where the fault was due only to the confusion incident to recent changes in the law, and to doubts as to which law applied."

We think this language is applicable, because, at the time the statement of facts was in course of preparation, H. B. No. 120 had become a law and was in force at the time the statement of facts was filed, and in view of such confusion we think it would be inequitable to strike the statement in this case. Because the statement under consideration is partly narrative and the remainder in question and answer form, is not a defect for which the statement should be stricken. Under District and County Court Rule 72, which provides that, where the evidence is sufficient to establish a fact, the testimony of witnesses and all deeds, wills, records, or other instruments relating thereto should not be copied in detail, but the facts thus established should be stated as facts proved in the case, it is no ground for striking the statement because it is prepared both in narrative and question and answer form. If a statement of facts sets out documentary evidence in full when it might have been briefly stated as to its substance, this would be ground for taxing the additional cost incident to copying the instrument in full against the appellant, but the statement should not be stricken for that reason.

The appellee also moves to strike the appellant's brief because it is not shown therein that the propositions are germane to any assigned error, because there is no proper statement of any errors, and because there is no showing in the brief that any errors are relied on upon which the appeal is predicated.

We find at the back of the brief 147 assignments of error, and it is our duty to assume that the appeal is predicated upon at

least some of them. In fact, the brief seems to be long on assignments of error. We regret to say that it is held that the propositions do not have to expressly refer to assignments of error or show to which particular error assigned they are germane. 3 Tex. Jur. 889, § 618.

This court did not hold in Heatley v. W. P. Ponder & Sons, 40 S.W.(2d) 951, that it was not necessary to have assignments of error in the brief. The brief in that case contains assignments of error, though they were not so designated. To assign means "to point out with precision; particularize; specify" (Standard Dictionary), and the errors were specifically pointed out in the brief filed in that case. As we understand the amendment to article 1757 by the Forty-Second Legislature, c. 45, § 1 (Vernon's Ann. Civ. St. art. 1757) which prescribes the requisites of a brief, it requires a brief to contain, among other matters, "2. The alleged error or errors upon which the appeal is predicated. * * * 4. A statement and/or argument on the errors assigned." It is clear from this language that the Legislature intended every brief to contain an assignment of error by whatever name it might be designated. The amendment by the Forty-Second Legislature, c. 75, § 1 (Vernon's Ann. Civ. St. art. 1844), of article 1844 manifest a clear intention that assignments of error should be filed in all cases appealed, but relieves both parties of the duty of filing independent assignments in the trial court, and requires the assignment to be set out in the brief only. In other words, the effect of the amendment is to relieve the appellant, whether or not he has filed a motion for new trial in the lower court, of the duty of filing additional formal assignments of error in that court before taking out the transcript, Lamar-Delta County Levee Improvement District v. Dunn (Tex. Civ. App.) 42 S.W.(2d) 872; and the appellate court, in the absence of such assignments in the brief, is restricted to the consideration of errors which are fundamental, Jennings-Progress Common School District v. Marvin School District (Tex. Civ. App.) 42 S.W.(2d) 805. We overrule both motions.

We think the remittitur entered in the lower court cured the error in so far as it awarded a recovery in a lump sum.

By the third proposition the appellant insists, because under the undisputed testimony showing that the injuries complained of by appellee resulted from his breathing gas from the exhaust pipe of an automobile for more than an hour while engaged in the usual course of business, that therefore the injury is not the result of an accident, but is an occupational disease for which no compensation can be recovered under the Workmen's Compensation Law (Vernon's Ann. Civ. St. arts. 8306–8309). We overrule this contention.

Appellant has not challenged the sufficiency of appellee's allegations setting up accidental injury. Suffice it to say they are sufficient and are fully supported by the testimony of the appellee and by Carl Alexander and other witnesses.

In the case of Barron v. Texas Employers' Insurance Association (Tex. Com. App.) 36 S.W.(2d) 464, an accidental injury is defined as one occurring unexpectedly not in the natural course of events, and which may possibly be prevented by exercise of due care by the employer, and an occupational disease is defined as one that is usually resulting from pursuit of an occupation and must be the result of slow and gradual development. In the opinion it is said that an occupational disease is one which may possibly be prevented by the exercise of due care and caution upon the part of the employer, and for that reason is not within the provision of the Compensation Law, and that the distinguishing characteristic of accidental injury is that it can always be traced to a definite time, place, and cause. The testimony introduced by appellee traces the injury of which complaint is made to the fact that he had by the aid of a creeper gone under the automobile while the engine was running, which was the usual method of performing the duties required of him by his employer, and had suddenly and unexpectedly inhaled a quantity of carbon monoxide and became unconscious. The record shows that a fellow servant of the employer found him in an unconscious condition and pulled him from under the car and had him carried to the hospital. According to the rule established in Texas, this constitutes such an accidental injury as entitles the complainant to compensation, and the facts alleged and proven bring this case clearly under the Barron Case. Texas Ind. Ins. Co. v. Gannon (Tex. Civ. App.) 38 S.W.(2d) 181; Travelers' Insurance Co. v. Smith (Tex. Civ. App.) 266 S. W. 574; Malley v. Union Ind. Co. (Tex. Com. App.) 12 S. W.(2d) 1002.

By the fifth proposition it is insisted that the court erred in not defining the word "injury" in the charge. It is true that in Associated Ind. Corp. v. Wilson (Tex. Civ. App.) 41 S.W.(2d) 143, Judge Conner held that it was the duty of the trial court to define the legal term "injury." In that case, however, the fact of the injury and the cause thereof were sharply contested. In this case it is conceded that Noack was injured. The only testimony which tends to show that his condition was due to any other effect or circumstance is a certified copy of the physician's report of his physical examination made at the place of enlistment when Noack was drafted into the army. The notation is as follows: "Heart: Mitral, regurgitation." The medical officer, Bruce, further states in his certificate that Noack has no physical defect disqualify-

ing him from service in the United States Army.

Further documentary testimony was introduced, signed by E. A. Simpson, captain, commanding Seventh Texas Infantry, in which we find this recital: "Recommended for discharge on account of mitral regurgitation. Heart palpitates when exerting. Defects existed prior to date soldier reported at company rendezvous."

This is all unsworn testimony, and is clearly inadmissible as evidence in this case.

In the case of Laird v. Boston & M. R. Co., 80 N. H. 58, 114 A. 275, 16 A. L. R. 243, in discussing the admissibility of the certificate of examination by the board of draft examiners of Laird, who was accepted for service in the army, the court said: "The finding of the board of draft examiners was not binding upon the plaintiff, except for the purpose for which it was made, and therefore evidence of it should not have been admitted. The examination of the plaintiff by the board was an ex parte proceeding, so far as he was concerned. He was summoned and compelled to appear and submit to the examination; but no hearing, in which he had any part, preceded their finding as to his physical condition. He had no opportunity to cross-examine the board, to discover how they reached their conclusions, or to take any action in his own behalf. 'It is a well-established general rule that a litigant cannot be affected by the words or acts of others with whom he is in no way connected, and for whose sayings or doings he is not legally responsible.' 22 C. J. 741. The findings of the board of draft examiners cannot stand any better as evidence against the plaintiff in this case than a judgment of a court, which is not evidence against one who is not a party or privy to it."

This certified copy of the examining officer's certificate is not made admissible in evidence by any statute in Texas. It recites facts which are the mere conclusions of the parties making the certificate. These facts are not sworn to by any one, and Noack had no opportunity to cross-examine said parties with reference to the statements, and they are clearly hearsay. They are not part of the res gestæ, but are rather to be excluded under the rule of res inter alios acta. U. S. v. O. G. Hempstead & Son (C. C.) 153 F. 483; North American Accident Ins. Co. v. Miller (Tex. Civ. App.) 193 S. W. 750; Richards v. Rule (Tex. Com. App.) 207 S. W. 912.

■ This testimony it seems was not objected to, but, since it is wholly incompetent and inadmissible under the rule announced in Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, this court cannot consider it.

■ In the absence of this testimony, there is nothing to contradict the testimony of Noack and his witnesses showing that he was injured exactly as he states and in the man-

ner and at the time alleged. This being the state of the record, we are not willing to hold that it was the duty of the trial court to define the term "injury."

■ Moreover, article 8309 says that injury and personal injury shall be "construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

It will be seen that this definition extends the meaning of the word "injury" beyond its popular meaning, and is more favorable to the appellee, Noack, than the word in its generally understood meaning, and the failure of the court to define it is therefore in favor of the appellant, and it cannot therefore complain.

■ By the sixth proposition it is contended that the court erred in refusing to define the word "permanent." This was not error. Bankers Lloyds v. Pollard (Tex. Civ. App.) 40 S.W.(2d) 859.

The seventh, eighth, and ninth propositions are predicated upon the assumption that the evidence showed that Noack had previous to the accident been suffering from mitral regurgitation of the heart. Since there is no competent and admissible testimony tending to show that fact, it is unnecessary to discuss these propositions.

■ By the tenth proposition the appellant insists that there was reversible error in the action of the trial court in permitting Noack's counsel to appeal to the prejudice and sympathy of the jury by stating that he had to try the case alone, while the insurance company had a large number of lawyers against him.

It appears from the court's qualification of the bill that no objection was made at the time of the argument, nor during the trial. The language objected to is as follows:

"We are going into this case not complaining but realizing we are under certain decided disadvantages. Alexander Noack is at a great disadvantage in that he has been compelled to rely upon my humble efforts to be his lawyer in this case and that it has come about that I have been obliged to fight the case alone; when I was cross-questioning a witness or on direct examination, I had nobody at my elbow to remind me of something I overlooked. I did not have anybody to chase here, there and yonder to get all my testimony and notify witnesses and things of that kind.

"This case was filed and was read to you by Mr. Hobart Price. None of those lawyers who signed that petition are here to help try the case. Then here is this distinguished counsel, D. A. Frank and Hobart Price, and the local attorney, Mr. Maddox. Then it developed in the course of the testimony that a man named Bailey went after Hoffman and

worked him up, and then a Mr. Cade went after Mr. Simpson and handled him and I guess told him what he wanted him to testify to and got him down here. That is seven experts pitted against me; and then you know, I am inclined to believe there are eight pitted against me and that eighth one is Simpson."

There seems to be nothing inflammatory in this language and nothing abusive or harsh, but it rather appears that counsel was complimenting opposing counsel and throwing bouquets at them and fishing for a compliment for himself, rather than sympathy for his client. The record fails to disclose that any injury resulted by reason of counsel's recitation of the numerous facts all of which the jury could know and had evidently seen during the trial.

This further statement by counsel is the basis of the eleventh proposition: "This insurance company tell you, and Judge Frank questioned you before you were selected on the jury, and always wound up with this question to each man, looking him right squarely in the face, 'And you will give us justice, won't you?' Gentlemen, I join in that plea. I ask you to give the insurance company justice but I do not ask you to take their definition of what justice is. There is the insurance contract that this insurance company insured good Mr. Snowden over there (holding the policy before the jury). Mr. Snowden is not a party to this suit."

The court qualified the bill by the statement that the policy had been introduced in evidence without objection.

We find nothing in any of the remarks made by counsel, and set out in the several bills of exception, with reference to the insurance policy, which was in any degree inflammatory or which in any sense appealed to the prejudice of the jury. Much of what has been said was evidently in a jocular vein, and no prejudice has been shown. Counsel described the testimony of the doctors as a battle of words between them, and referred to the three doctors from Dallas as the "three wise men from the East." They used considerable technical language in testifying, and a perusal of their testimony inclines us to believe that counsel's jocular remarks had more truth in it than he evidently intended. The statement that appellant's lawyer witness was charging $50 a day and expenses is part of the record, and it is fur-

ther shown by the qualification of the bill by the court that Dr. Sam Webb from Dallas was being paid $100 per day for attending the trial.

Counsel further said: "I do not pass as being any doctor. I have a law suit that I prepared on the issues of the case and this being a case on carbon monoxide poison. I took some time to do some careful studying of it, and after that studying there came in that Dr. Grigsby, who has practiced for thirty-eight years. Judge Frank started by asking him about the organs of the heart— little simple questions that you and I learned when we were twelve years old. Yes, three wise men came from the East to overpower a Lynn County jury—and to beat down a little humble lawyer from Slaton, Texas."

But he nowhere admits in his brief that he is a "little humble lawyer" or that anybody has succeeded in beating him down, and we must conclude that the remarks were not seriously made. His criticism of the testimony of the physicians who were witnesses against his client seems to be well within the rule of propriety. He commended one of the doctors very highly, stating that he thought he wanted to be honest and fair, although there was a "subconscious ambition to please his employer."

We have carefully reviewed all of the remarks made by appellee's counsel and set out in numerous bills of exception which appellant contends are unfair or violate the rules of legitimate argument in cases of this character. When he states a fact, it appears from the record that he is correct. There are a few flights of oratory, but they are based upon cold facts, and it does not appear that he unduly influenced the jury by his oratorical effort.

The last contention is that, because there was no issue inquiring the amount of Noack's average wages during the preceding year submitted or answered, the verdict does not support the judgment.

The pleading is sufficient upon this issue, and the evidence supports the pleading. Appellant failed to request a finding upon that issue, and we must presume in support of the judgment that the court made the necessary finding. Barron v. Texas Employers' Insurance Ass'n, supra, and authorities therein cited.

We find no reversible error in the record, and the judgment is affirmed.