## TEXAS EMPLOYERS INS. ASS'N v. COBB et al.

### No. 3682.

Court of Civil Appeals of Texas. El Paso.

June 9, 1938.

Rehearing Denied June 23, 1938.

Lea & Edwards, of El Paso, for appellant.

L. D. Ratliff, Jr., of Spur, and Callaway & Callaway, of Brownwood, for appellees.

WALTHALL, Justice.

This is a compensation case under the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq.

Dr. D. P. Cobb and wife, Mrs. Florence Cobb, as surviving father and mother of Goss D. Cobb, and Carol Cobb, as surviving wife of Goss D. Cobb, filed independent suits in the Forty-first District Court of El Paso County, Texas, seeking to set aside an award of the Industrial Accident Board adverse to all of them, and sought to recover compensation for the death of Goss D. Cobb.

The District Court ordered the causes consolidated and Carol Cobb thereafter filed a disclaimer. Dr. and Mrs. Cobb, in the consolidated case, in their amended petition, sought to recover against defendant, Texas Employers Insurance Association, on the ground that their son, while an employee of the John Deere Plow Company, had sustained accidental personal injury in El Paso County, Texas, as the result of carbon monoxide gas, from a gas burner in a tourist camp cabin occupied by Goss D. Cobb.

Defendant below, appellant here, defended on the ground that the death of Goss D. Cobb was not the result of an industrial accident; that at the time death occurred to Goss D. Cobb he was not engaged in or about the furtherance of the affairs or business of his employer, and that he did not die as the result of an injury having to do with, or originating in, the work, trade, business or profession.

The case was tried to the court without a jury, and submitted upon an agreed statement of facts.

The court rendered judgment in favor of plaintiffs, and defendant appeals.

### Opinion.

The ultimate and sole questions to be determined on this appeal are, whether the agreed statement of facts shows as

a matter of law that the death of Goss D. Cobb was the result of an industrial accident, and whether at the time his death occurred Goss D. Cobb was engaged in or about the furtherance of the affairs or business of his employer and died as the result of an injury having to do with, or originating in, the work, trade, business or profession of his employer, and we state the facts with the above inquiries only in view.

Some parts of the agreed statement we abbreviate.

On November 9, 1936, Goss D. Cobb was an employee of the John Deere Plow Company, a corporation doing business in Texas and having an office in Dallas, Texas, and doing business in various counties in Texas, including El Paso County, and employing more than three employees and engaged in an industry to which the Texas Workmen's Compensation Act applied. Prior to the above date, and at all the times involved here, appellant was the insurance carrier for the John Deere Plow Company for the benefit of its Texas employees, including Goss D. Cobb, who died in the City of El Paso, El Paso County, Texas, between Sunday evening of November 8, 1936, and the following Tuesday morning, November 10, 1936.

Both the employer and appellant had notice of the death of Goss D. Cobb within thirty days from the date of his death, which was caused by carbon monoxide gas poisoning, as is more fully stated later.

Goss D. Cobb, at the time of his death, was employed by the John Deere Plow Company in its collection department, with headquarters at Fort Worth, Tarrant County, Texas. He was employed to collect and to aid in the collection of notes and accounts due to his employer by various debtors throughout the State of Texas, and it was contemplated by his employer that his headquarters would be in Fort Worth, Texas, and that he should work in and out of that city. He was required by his employment to travel from place to place while out of his headquarters in his efforts to make collections and to aid in the collection of notes and accounts. He was furnished an automobile by his employer which was used by him in his travels from town to town. Cobb's employer paid Cobb's board and lodging expenses when away from his headquarters, and it was contemplated that he would be required to stay at hotels and other suitable places of abode while working in territory outside of his headquarters city.

On November 6, 1936, it was suggested to Cobb by his superior officer that he leave Fort Worth for El Paso on the following day and to arrange for his stay at a hotel, or a suitable place elsewhere, on a weekly basis. Cobb arrived in El Paso on Sunday night, November 8, 1936, and went to the Del Norte Tourist Camp, in which his employer owned no interest and over which it had no control. On his arrival he was assigned to a cabin and entered. He either did not open any window or door, or if any were open at the time he entered the cabin, he closed all of them. The door and all windows were in good working condition for opening and closing, if desired. For the use of a guest desiring heat, the cabin was furnished with a gas heater in good mechanical condition and supplied by natural gas from the mains of the City of El Paso for purposes of fuel. Cobb was familiar with its operation and use. The gas heater was not lighted at the time the cabin was assigned to Cobb.

On Tuesday morning, November 10, 1936, the door and screen to Cobb's cabin were locked from the inside and Cobb was found to be dead. He was clothed in pajamas, was in bed with bed covers pulled up over his body; was lying on his back with his right arm out and on the top of the bed covers. All windows and doors were closed. The electric light was turned off at the switch, but the gas stove used for heating the cabin was burning a clear, blue-tipped flame. Cobb's leather portfolio was on the floor at the foot of the bed open. In the room was Cobb's large brief case, which had been opened, some papers "pulled up," but still in the brief case. Business papers, mostly notes and bills, and some personal letters were on the table and floor by the brief case, but none on the bed. Cobb's trousers were hanging over the top of the bathroom door, and his purse was in one of the trousers pockets.

An El Paso County coroner ordered an autopsy to be made by a physician, which was performed, and, without stating the language of the physician's report, the diagnosis was: "Carbon monoxide poisoning."

The parties stated at length in the agreement how carbon monoxide gas is made up and how composed, produced and formed, and that such gas accumulates to the extent of becoming dangerous to human life, that is, as applied here, whenever and wherever the supply of oxygenated air becomes depleted in any room in which any of the stated forms of generated heat are used.

As stated in the agreement, the parties agreed as follows:

"Goss D. Cobb was first employed by the said John Deere Plow Company in its collection department on December 2nd, 1935. Between that date and the time of his death, he worked 342 days and earned a total of $958.23, as follows:

"December, 1935, $77.33; January, 1936, $70.90; February, 1936, $80.00; March, 1936, $80.00; April, 1936, $80.00; May, 1936, $80.00; June, 1936, $80.00; July, 1936, $80.00; August, 1936, $80.00; September, 1936, $100.00; October, 1936, $100.-00; November, 1936, with salary allowed to the 15th day of November, 1936, $50.00.

"In addition to the above, at such times as he was required by his employment to be away from his headquarters, there was refunded to him by his employer, on an expense account, the amount of his hotel bills for lodging and meals, necessitated as extra expense while he was away from the city in which his headquarters was located, and between December 2nd, 1935 and November 10, 1936, such traveling expenses amounted to $712.38. In performing his services for the company, he used an automobile owned by the company, the entire upkeep and expense of operation of same being maintained by the company, including gasoline, oil, tires, tubes and mechanical repairs. The automobile being in the possession of Cobb, he paid these expenses at the time they were incurred, and at the end of each month presented to his employer receipted bills covering all such expenditures, and thereupon the company refunded to him the amounts expended on the repairs and upkeep of said automobile, and during the period of his employment, from December 2, 1935 to November 10, 1936, the repairs and upkeep on said automobile amounted to $668.54."

The trial court adjudged that plaintiff Carol Cobb take nothing.

The court further adjudged that appellees D. P. Cobb and wife, Florence Cobb, are entitled to recover of appellant for compensation for the death of their son Goss D. Cobb, in equal portions, and stated that their son's average weekly wages are to be determined by adding his total earnings of $958.23 during the twelve months next preceding his death to the $712.38, being the amount refunded to him by his employer between December 2, 1935, and November 10, 1936, on an expense account for hotel bills, lodging and meals necessitated as extra expense while he was away from the city of his headquarters, and dividing the result by fifty-two, showing $33.12, the statutory sixty per cent of which is $19.27 per week.

The court further considered that appellees should recover of appellant compensation at the rate of $19.27 per week for 360 weeks from November 9, 1936, with six per cent per annum interest on installments now past due, and that fifty weeks have already accrued and matured to and including October 25, 1937.

And so finding, the court adjudged that appellees recover of appellant as above.

The court further adjudged the appellees recover of appellant weekly compensation at the rate of $19.27 per week for 310 consecutive weeks following October 25, 1937, with the same interest, as same shall mature.

The court further adjudged that the entire recovery, to the extent of an undivided one third, is for the use and benefit of the attorneys representing appellees, Mark Calloway and Gib Calloway, and that the judgment may be satisfied by payment of two thirds thereof to appellees and one third to said attorneys.

Appellant prosecutes this appeal, and, by several propositions, predicates error in rendering judgment in favor of appellees against appellant in any sum whatsoever, for the reasons stated to the effect that, on the basis of the agreed statement of facts upon which the case was submitted and tried, appellees wholly failed to discharge the burden imposed upon them by law to prove that their son, Goss D. Cobb, died as the result of an industrial accident, in that, according to such agreed statement, the son Goss died as the result of his own act in permitting carbon monoxide gas to accumulate in dangerous quantities in a room not chosen by his employer but selected by the son himself for living quarters, under circumstances indicating death from ordinary hazards of living such as might

and frequently do happen to members of the general public, and not a risk peculiar to the business of collecting accounts for his employer.

The only inquiries we think necessary to make are whether the injury received by Goss D. Cobb is one having to do with, and originating in, the work, business, trade or profession of his employer; and whether the injury was received by Cobb while engaged in or about the furtherance of the affairs or business of his employer.

■ The pertinent part of Article 8309, second subdivision four, after excluding injuries not included, provides: An injury sustained by an employee in the course of employment, "shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

In Texas Employers Ins. Ass'n v. Andrews et al., 110 S.W.2d 49, the Commission of Appeals, in referring to the above statute, said the language was rather general, and it would be difficult and perhaps not desirable to attempt to include within the specific terms of a rule every conceivable case of compensable injury. Each case must be decided upon its background of facts. Millers' Indemnity Underwriters v. Heller, Tex.Civ.App., 253 S.W. 853. An injury may be said to arise out of the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. A risk is said to be incidental to the employment when it belongs to, or is connected with, what a workman or employer has to do in fulfilling his contract of service. 71 Corpus Juris, par. 64; pp. 73 and 74; Maryland Casualty Co. v. Smith, Tex.Civ.App., 40 S.W. 2d 913.

Appellant submits that the injury to Cobb occurred at a time when he had voluntarily turned aside from his employment for purposes of his own, or in the exercise of a personal privilege, and refers to cases which deny compensation under such supposed state of facts. We do not, however, take such view of the facts.

■ Our courts hold that to entitle the employee to compensation it is not essential that he should, at the time of the injury, have been discharging some specific duty required by his employment. If the risk is incidentally attendant upon work or business in furtherance of the employer's business, and does not come within the exceptions stated in Article 8309, the employee is protected. Federal Surety Co. v. Ragle, Tex.Com.App., 40 S.W.2d 63, and cases referred to in 45 Tex.Jur. p. 466, note 9.

Counsel in their brief cite cases in support of their propositions from other jurisdictions. With the exception of the New York cases, none of the cited cases involve commercial travelers, as here, and where the employee is specially directed where to stay or where the place to stay is expressly left to the choice of the employee, and wherever he stays the expenses as to the time of the employee and the hotel or tourist camp are paid by the employer. We think the New York cases, if not distinguishable in some of the facts, express views contended for by appellant.

■ We have concluded from the agreed facts that the injury to Cobb was the result of an accident within the meaning of the Workmen's Compensation Law of this State. Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867; Commercial Standard Ins. Co. v. Noack, Tex.Civ.App., 45 S.W.2d 798; Id., Tex.Com.App., 62 S. W.2d 72 (carbon monoxide case); Indemnity Insurance Co. v. Wright, Tex.Civ. App., 69 S.W.2d 438 (carbon monoxide case).

■ Under the agreed facts of this case the character of employment of Cobb imposed upon him the duty to go from place to place at the will of his employer in the performance of his duty, and the risks incident thereto are directly causal connections between the employment itself and the injury. In such cases resulting injuries are the proper subject for compensation under our Workmen's Compensation Act.

The case is affirmed.