**NORTH RIVER INSURANCE COMPANY, Appellant,**

v.

**Clinton PURDY, Appellee.**

No. 04–86–00031–CV.

Court of Appeals of Texas,
San Antonio.

June 10, 1987.

Sharon E. Callaway, Lamont A. Jefferson, Groce, Locke & Hebdon, San Antonio, for appellant.

J. Thomas Rhodes, Stephen Dittlinger, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

CADENA, Chief Justice.

Defendant, North River Insurance Company, appeals from a judgment based on jury findings awarding plaintiff, Clinton Purdy, compensation under the Texas Workers Compensation Act for injuries received when he prevented a man from entering through a window in a motel room where he was staying. Defendant is the compensation carrier for plaintiff's employer, MICA Corporation (MICA).[1]

MICA's principal business consists of providing roadway signs and lighting for the Texas Highway Department and other governmental entities. Because of the nature of the services rendered by MICA, the major portion of the work performed by its employees is done in cities and localities other than Fort Worth, where MICA maintains its home office. In most cases, when MICA sends its employees to work on a highway project away from Fort Worth, it is understood that the employees will temporarily relocate to the city where the work is to be performed. The employees, including plaintiff, are paid by the hour, receive $25.00 per day to cover living expenses, and are permitted to stay wherever they wish when away from Fort Worth.

Plaintiff was sent to San Antonio to work on a U.S. Highway 90 project for the Texas Highway Department. He drove to San Antonio with his foreman, who took him to the Gateway Motel, described as the only "fit" motel near the work site. During the time plaintiff worked on the San Antonio project, he stayed at the Gateway. On January 13, 1984 at about 3:00 A.M. he saw a man trying to enter his motel room through a window. He got up and attempted to push the intruder back through the window. As a result, he cut his hand on window glass, severing numerous tendons and nerves, and requiring extensive microdissection surgery.

■ The Texas Worker's Compensation Act defines the term "injury sustained in the course of employment" to include all injuries "having to do with and originating in" the employer's work, trade or business and which are received by the employee while he is "engaged in or about the furtherance of his employer's affairs or business." TEX.REV.CIV.STAT.ANN. art. 8309, § 1 (Vernon 1967). Defendant insists that plaintiff was not injured while he was engaged in the furtherance of his employer's business, because the injury occurred after plaintiff, "an hourly wage earner, had left work for the day, was not on call, and in fact was asleep in the middle of the night." In advancing this argument defendant relies heavily on *Rodriguez v. Great American Indemnity Co.*, 244 F.2d 484 (5th Cir.1957); and *Wallace v. Texas Indemnity Insurance Company*, 94 S.W.2d 1201 (Tex.Civ.App.—El Paso 1936, writ ref'd).

In *Rodriguez*, a San Antonio carpenter, an hourly wage earner, was performing work in Del Rio for his employer. Because it was not practical for him to make the round trip of 320 miles every day, Rodriguez stayed in a Del Rio hotel, was paid an allowance for room and board, and made

---

1. It is unclear from the record whether Purdy's employer is MICA or MICO Corporation. It is called both throughout the record and briefs, and even Purdy, in his petition, uses both names.

his own arrangements for food and lodging. The Fifth Circuit, applying Texas law, held that his death as the result of a hotel fire after he had retired for the night was not compensable because he was not injured in the course of his employment. The court applied the well-settled rule that an employee who is employed at regular hours and places is not entitled to compensation if he is injured going to and from work or when asleep or otherwise off duty. 244 F.2d at 488. The court noted also that Rodriguez worked only occasionally for this employer and frequently worked for other contractors. *Id.* at 486.

In *Wallace*, the worker, who lived in quarters furnished by his employer near the job site, was denied compensation for an injury suffered in his living quarters while he was off duty. The court pointed out that he "was as free to come and go as he would have been had he been living in his own home entirely separate from his employer's premises." 94 S.W.2d at 1202.

These two decisions are incompatible with recent Supreme Court decisions and later a decision by the same court which decided *Wallace*. In *Shelton v. Standard Insurance Company*, 389 S.W.2d 290 (Tex. 1965), a truck driver was on a 33–hour trip for his employer. When he arrived in Dallas he was told that the truck he was supposed to drive to Wichita would not be ready until the next morning. He checked into a Dallas motel and went to eat at a cafe across the street from the motel. He was struck by a car while on his way to the cafe. The court held that the injury was compensable because an employee whose work entails travel away from his employer's premises is considered to be acting within the course of his employment when the injury has its origin in a risk created by the necessity of sleeping or eating away from home, except where the record shows a distinct departure on a personal errand. 389 S.W.2d at 293. *See also,* 1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 25.00 *et seq.* (1987). In *Mapp v. Maryland Casualty Corp.*, 730 S.W.2d 658 *reversing* 725 S.W.2d 516 (Tex. App.—Beaumont 1987), the Supreme Court relying on *Shelton,* held that an hourly employee who sustained injuries when she was kidnapped from the parking lot of a cafeteria where she was eating lunch was not, as a matter of law, outside the course of her employment.

A similar conclusion was reached in *Texas Employers' Insurance Association v. Cobb*, 118 S.W.2d 375 (Tex.Civ.App.—El Paso 1938, writ ref'd). There, a salaried collection agent was required by his employer to travel from place to place in his efforts to collect notes and accounts due his employer, who paid the employee's board and lodging expenses while he was on the road. On a trip to El Paso, the employee checked into a tourist camp, was assigned a cabin and died during the night from carbon monoxide poisoning. The court found the employee's death to be compensable.

North River seeks to distinguish *Shelton* and *Cobb* on the basis that the injured parties in those cases were salaried employees as opposed to those in *Rodriguez* and *Wallace* who, like Purdy, were hourly wage earners with fixed hours of employment. We do not find this to be a valid distinction. While it could be argued that Shelton and Cobb were paid while they ate and slept since they were on salaries, they certainly were not "on duty" during those times. Their employers recognized that their employees' needs for rest and nourishment had to be met in order for them to perform their jobs. *Shelton,* 389 S.W.2d at 294; *Cobb,* 118 S.W.2d at 377. While Shelton could probably eat while performing his job, we doubt that he was encouraged by his employer to do so, just as it was not contemplated that he could make the 33 hour trip without stopping for rest and nourishment. Cobb certainly could not collect accounts in his sleep. Furthermore, the Supreme Court's recent holding in *Mapp v. Maryland Casualty Corp., supra* makes it clear that whether the employee is paid on an hourly or salaried basis is not dispositive in determining whether an employee injured while traveling is within the course of employment.

The test for determining whether an injury was received during the course of em-

ployment when the injury was suffered by an employee whose employer requires him to travel is whether the injury "has its origin in a risk created by the necessity of sleeping or eating away from home...." *Shelton*, 389 S.W.2d at 293. Purdy, like Shelton, was required by his employer to perform his duties at a location distant from his home. His employer, realizing that shelter and sleep were essential to enable Purdy to perform the work for which he was hired, paid him a stipend to help defray the expense of meeting those needs. It was implicit in sending Purdy to San Antonio that he would have to find shelter in which to rest at night. Accordingly, Purdy's injury occurred while he was engaged in or about the furtherance of his employer's affairs or business. *Shelton*, 389 S.W.2d at 292.

█ A claimant under the Texas Worker's Compensation Act must show not only that the injury was received in the course of his employment, but also that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession. *Texas General Indemnity Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex.1963). North River argues that the risk of injury while repelling an intruder in a motel room is not a risk peculiar to performing the job of utility laborer for a road sign and lighting company, but is a risk to which any one of the general public is subjected. Therefore, North River contends, Purdy has failed to meet the second prong of the test.

█ The peculiar risk test urged by appellant does not reflect Texas law.[2] As noted by the Texas Supreme Court, the positional risk test has been accepted by Texas courts as well as by other jurisdictions. *Walters v. American States Insurance Co.*, 654 S.W.2d 423, 426 (Tex.1983). This test, sometimes referred to as the "environmental risk" or "but for" test, focuses the court's inquiry upon whether the injury would have occurred if the conditions and obligations of employment had not placed the claimant in harm's way. 1

A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 6.30 3–4 (1987).

In *Texas Employers' Insurance Association v. Cobb, supra,* Cobb, a traveling salesman on a business trip, died from carbon monoxide poisoning while sleeping in a tourist cabin. The court allowed recovery, noting that the character of Cobb's employment:

> imposed upon him the duty to go from place to place at the will of his employer in the performance of his duty, and the risks incident thereto are directly causal connections between the employment itself and the injury.

*Cobb*, 118 S.W.2d at 379. Likewise, Purdy was injured at night in a motel room he had leased so that he could perform his job at his employer's work site the next day. His employer's business required that he stay that night in San Antonio. It matters not that every hotel guest, whether or not he is a utility laborer, is subject to the danger of an injury of the kind suffered by Purdy. Nor does it matter that Purdy might be subject to a similar injury had he been asleep in his own home. Purdy was in the motel room and subject to this danger due to the conditions of his employment. *Lumberman's Reciprocal Association v. Behnken*, 112 Tex. 103, 246 S.W. 72, 74 (1922). It is abundantly clear that Purdy would not have been in San Antonio that night but for his job. The risk that Purdy would sustain an injury while staying in the motel room is reasonably incident to the conduct of his employer's business. *See also Texas Employers' Insurance Association v. Harbuck*, 73 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1934, writ dism'd), where the court found that a traveling salesman who was fatally injured as a result of an attempt to escape a hotel fire received injuries that "had to do with and originated in the business of his employer."

North River argues also that the trial court erred in submitting the "comfort and convenience" instruction in connection with Special Issue No. 1. North River contends that there is no evidence to support its

---

**2.** The peculiar risk doctrine has "gradually achieved a well-deserved oblivion" in Texas and elsewhere. 1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 6.30, 3–4.

submission, that the instruction is misleading and, that it amounts to a direct comment on the weight of the evidence.

■ Special Issue No. 1 included the following definition and instruction:

"INJURY IN THE COURSE OF EMPLOYMENT" means any injury having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. An injury, "has to do with and originates in the work business trade or profession of the employer" when it results from a risk or hazard which is ordinarily inherent in the performance of the work or business.

You are instructed that an employee may in the course of his employment perform acts of a personal nature that a person might reasonably do for his health and comfort and an injury sustained while doing so is not a departure from the course of employment.

North River claims that to be compensable, an act undertaken for purposes of personal health and convenience must have occurred while on the employer's premises and during working hours, *Weaver v. Standard Fire Insurance Co.*, 567 S.W.2d 34 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.), and asserts that since Purdy's injury was sustained away from his employer's premises and outside his normal working hours, as a matter of law there is no evidence that would support submission of a comfort and convenience instruction. We disagree. The authority cited is not dispositive of the issue of whether a traveling employee is still acting within the scope of his employment when undertaking acts for personal comfort and convenience such as eating or sleeping.

Numerous cases previously discussed clearly establish that a claimant need not be on his employer's premises in order to be in considered injured "in the course of employment." *See e.g. Mapp v. Maryland Casualty Corp., supra; Shelton v. Standard Insurance Co., supra; Texas Em-*

*ployers' Insurance Association v. Cobb, supra.* Cases such as the ones noted above, where a traveling employee was injured while eating or sleeping, are in reality "comfort and convenience" cases. Whether an employee was in the course of employment when he received an injury is ordinarily a question of fact, and each case must be determined upon its own peculiar facts. *Standard Fire Insurance Co. v. Rodriguez*, 645 S.W.2d 534, 540 (Tex.Civ. App.—San Antonio 1982, writ ref'd n.r.e.). Thus, because the evidence in this case clearly indicated that Purdy's injury was sustained off the work site and outside of normal working hours, it was proper for the trial court to omit these elements from the instruction.

■ North River argues that the instruction was an improper comment on the weight of the evidence because the jury might assume that any act of personal convenience taken at any time and in any place would be within the course of employment. In reviewing a complaint regarding a jury charge, the charge must be considered as a whole. *Briseno v. Martin*, 561 S.W.2d 794, 796 (Tex.1977). The instruction complained of states that "an employee may in the course of his employment perform acts of a personal nature...." The phrase "injury in the course of employment" is defined in the preceding paragraph, to which North River had no objection. The instruction informed the jury that the act could be one for the employee's health or comfort, but that it also must be undertaken within the framework of the "course of employment" definition given in the preceding paragraph of the charge. In other words, the act of a personal nature must be done while the employee was "engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere." The charge properly states the applicable law and is not a comment on the weight of the evidence.

Finally, North River argues that the trial court erred in submitting an incomplete instruction on the employee's intention to injure another. North River contends that the intention of the third party attacker

was material to a resolution of the course of employment issue.

The trial court submitted the following concerning an employee's intent to injure another:

"EMPLOYEE'S INTENTION TO IN-JURE ANOTHER" means an injury caused by the employee's willful intention and attempt to injure some other person is not in the course of employment, unless the injury results from a dispute arising out of the employee's work or in the manner of performing it and the employee's acts growing out of such dispute are done in a reasonable attempt to prevent interference with the work or in reasonable self-defense.

North River requested an additional instruction that:

(a)n injury is not in the course of employment if it is caused by the act of another person intended to injure the employee because of reasons personal to the employee and not directed against him as an employee or because of his employment.

 The requested instruction was not proper because there is no evidence in the record indicating that the intruder injured or intended to injure Purdy. All that the evidence established was that Purdy prevented the intruder from entering through a broken window, and in so doing, injured himself. Issues and instructions not raised by the evidence do not require submission. *Bounds v. Caudle,* 560 S.W.2d 925, 930 (Tex.1977).

The judgment of the trial court is affirmed.