## MARYLAND CASUALTY CO. v. ALLEN et al. (No. 1907.)

Court of Civil Appeals of Texas. Beaumont.
Dec. 2, 1929.

Chas. D. Smith and W. J. Brown, both of Beaumont, for appellant.

Howth, Adams & Hart and Kitching & Kenna, all of Beaumont, for appellees.

WALKER, J. This is a compensation case by the appellees, the widow and surviving children of Blewett Allen, against appellant as the insurer of his employer, Beaumont Coca Cola Bottling Company. Answering special issues, the jury found that on or about the 7th day of May, 1927, while in the course of his employment, Allen sustained personal injuries to a blood vessel of the brain which resulted in his death. On this verdict judgment was entered in appellees' favor against appellant for the statutory compensation. All of appellant's propositions of error relate to the ruling of the trial court on two hypothetical questions admitted over its objections addressed to and answered by appellees' medical expert, Dr. A. A. Bailey, as follows:

Question No. 1: "Doctor, I'll ask you this question: A man about 41 or 42 years of age, and has been employed, working regularly for several months—was placed in a position that required him to exert himself by lifting on a heavy piece of machinery, say in the forenoon, about ten or eleven o'clock and in the afternoon he was required to lift again on the same machine, weighing about probably three to four hundred pounds, or maybe as much as 1,200 pounds, lifting with three other men upon this machinery, and if this man while lifting upon that machinery would fall over and die within a few moments what would you say was the cause of his death?" to which the witness answered: "That's a pretty long question to answer at one time, I would say that if the man was lifting a heavy weight and he fell while lifting the weight, without any other apparent cause, it would be in my opinion caused by the strain or lift."

Question No. 2: "Doctor, in a case where four men were required to lift an object that weighed from 300 to 1200 pounds, and while lifting upon that machine or that instrument one of these parties fell and died within a few moments, would you say that the strain or exertion that he placed himself to in lifting upon that object would be such as would be calculated to produce a ruptured blood vessel in his body that would cause his death or not?" to which the witness answered: "I can't just exactly answer that yes or no; I would say that if he was lifting and this occurred as a result of that lifting, it was the lifting that caused it, there being no other reason for it, and don't—but just to say all of those—these are relative—a man's tendencies to a rupture of a blood vessel has a great many relative questions in it, what the condition of the man would be, and thousands of men do lift heavy

weights, but they don't all have ruptured blood vessels, nor any great part of them, but ruptured blood vessels do occur, the way I understand it."

After the two foregoing questions had been asked and answered, over appellant's objections, the following additional question was asked Dr. Bailey by appellees and answered by him without objection:

"Now, doctor, there is testimony admitted here that Blewett Allen was about 41 or 42 years of age; that he was working for the Beaumont Coca Cola Bottling Works; had been working for the Beaumont Coca Cola Company about eight or nine months; that he had worked regularly for the company during that time; that is had not laid off on account of sickness during that time. There is further evidence that on the morning of May 7th, 1927, Blewett Allen in connection with several other employees, three or four in number, lifted upon an object there, a syrup machine; one of the witnesses says in his opinion it weighs three or four hundred pounds and another witness, a mechanic, testifies that it weighed probably 1200 pounds. That was lifted out in the forenoon about ten or eleven o'clock. There is further testimony here that in the afternoon Blewett Allen and two other employees were undertaking to lift the same object back into place. Now at that time Blewett Allen fell and died on his way to the hospital, within a few moments. Under that state of facts, doctor, would you say in your opinion Blewett Allen died from natural causes or as a result of an injury or a strain that he had in lifting on that machine? A. Well, I would have to say that it was due to the strain; that is the most likely thing that I could see. I would naturally attribute it to the only thing in evidence; if I saw a man shot down or I saw him fall and there was some shooting done, and I didn't know anything more about it, I would just say he was shot. Under those circumstances I would attribute his death as a result of straining and lifting."

Appellant objected to the first two questions on the ground that (1) there was no basis in the evidence for the recited premises of fact (a) that the machinery which Allen was helping lift weighed "from three or four hundred to twelve hundred pounds," and (b) that he "fell while lifting upon this machine at that time and died soon after"; (2) the premises of fact assumed in the questions were contradictory, confusing, indefinite, and uncertain.

Appellant asserts that the third question, and the answer thereto, was a nullity and of no force and effect, since, as it asserts, it was not based upon an assumption of fact but merely upon a recitation of the testimony, and appellant says further that this question was not, in substance nor effect, the same as questions 1 and 2, and that the answer carried to the jury an entirely different statement of fact.

### Opinion.

We think all of appellant's contentions must be denied. Hypothetical question No. 3, received without objection, was sufficient to form the basis of an expert answer. We think, construed as a whole, the question was not a mere recitation of testimony, as such, but was an assumption by the questioner that the facts recited in the question were true. The statement made in the first part of the question, "There is testimony admitted," was reduced to an assumption of fact by the closing statement, directly submitting the question to the witness, summarizing the effect of the testimony as "under that state of facts." It is clear from the answer of the witness that he assumed as true the recited testimony and based his answer on that assumption. Railway Company v. Compton, 75 Tex. 667, 669, 13 S. W. 667, is very much in point against appellant's proposition. In that case the hypothetical question was prefaced with this statement: "It is claimed in the case at bar," etc. Judge Gaines, writing the opinion, treated the question as assuming the facts, saying: "The facts assumed in the question," etc. We also think this question and answer are, in substance, a restatement of the other questions and their answers, and, if error was committed in their reception, it was rendered harmless by the admission of question 3 without objection. It is the rule that the admission of improper evidence is harmless where the same evidence is subsequently received without objection. Texas & Southwestern Digest, Appeal & Error, ☞ 1052(2).

But the court did not err in its rulings on questions 1 and 2. The premise of fact that the machinery weighed from 300 or 400 to 1200 pounds has support in the evidence. The bill of exception recites:

"Some of the plaintiff's witnesses had testified that the machinery was lifted out in one piece and weighed twelve hundred pounds, while other of plaintiff's witnesses had testified that the machinery was somewhat dismantled and taken out piece-meal and put back the same way and that the heaviest piece thereof, weighed three or four hundred pounds as well as the witness knew."

This was a sufficient premise for the assumption of the weight of 1200 pounds. Explaining this statement and the evidence on this issue, appellant insists that the testimony showed that the machinery had been dismantled, and that this was its assembled weight and not its dismantled weight, and that the deceased was lifting upon the machinery in its dismantled condition, and that the particular piece he was lifting upon weighed only 300 or 400 pounds. There was evidence to support appellant's construction but there was testimony to the effect that the machinery was not dismantled, and that it was assembled when the deceased was assist-

ing in lifting it. It is not necessary to quote from the record to show that there was testimony that the machinery weighed from 300 to 400 pounds. Appellant concedes that.

There was also testimony that the deceased "fell while lifting." The witness Lence Benjamin testified as follows: "As to whether I saw what Blewett did that afternoon, well, there was three of us putting the top piece on. I saw that. I was loading a truck you see, and Mr. Young, Mr. Ray Holland and Blewett Allen, that were putting the top piece on it and Blewett had a rod under the top piece and I heard Mr. Young say 'lift up a little.' He was talking to Blewett. About five minutes after that I heard a lot of scrambling and Mr. Young came through the back and came on through the front, and he told me to go hold up his head. I was loading a truck at the time Blewett fell and therefore did not see him fall."

The witness Benjamin further testified: "I didn't hear Blewett when he fell. I just heard a lot of noise and when I looked around he was lying down. At the time Blewett fell I think he was lifting up and I just heard Mr. Young say 'Lift up a little higher' and then I heard the fall."

The witness Ray Holland, who was helping place this machinery back, in the afternoon, and who was working beside Blewett Allen at the time he fell, testified as follows: "The foreman, Mr. Young, and Blewett Allen were helping place it back; just the three of us. We went to put it back in there, put the steel shaft into the sleeve on that bearing, but we didn't get it back when Allen fell. He went to step upon a soda water case there he was to step upon; just as he went to put the strain on it, to step upon that box, his foot slipped. By 'putting the strain on' I mean just as he went to raise it up, him and I and Young.. I was standing on this side, Blewett on this side (indicating) and Young was on the other side. He had to step upon the case to get it up. Just as he went to step up on it his foot slipped from under him before he got it off the floor, his foot slipped back and he fell."

It seems to us that this statement as made so clearly sustains the assumption of fact that the deceased "fell while lifting" that no further analysis of the evidence is required.

■ The premises of fact were not contradictory, confusing, indefinite, or uncertain. As we understand this proposition, it is based upon the range in weight from 300 or 400 to 1200 pounds. Appellant insists that appellees should have submitted a different question for each assumed weight. That could have been done, but it was not necessary. If, as asked, it was not confusing to the mind of the expert, then he had the right to answer it, and there is no indication from his answer to question No. 1 that the form of the ques-

tion was confusing or uncertain to him. He did not direct his answer to any particular weight, but assumed a "heavy weight." An object weighing 300 or 400 or 1200 pounds could certainly be so classified. If the defendant desired further information from the expert, it could have elicited the same upon cross-examination and learned from the witness what he meant by "heavy weight." It should also be borne in mind, in criticizing the reception of questions 1 and 2, that the answers were not objected to. The exceptions relate wholly to the form of the questions.

We are inclined to think that question No. 2 was not answered. To say, "If he was lifting and this occurred as a result of that lifting, it was the lifting that caused it, there being no other reason for it," means nothing. The answer assumed that the lifting was the cause of the death. The remaining portion of the witness' answer to question No. 2 had no relation to the question, and, if its reception was error, it was received without objection.

But neither the question nor the answers thereto were subject to any objection, and no error was committed in their reception, even if question No. 3 had not been asked and answered. It follows that the judgment of the trial court must be affirmed, and it is accordingly so ordered.

Affirmed.