## TEXAS INDEMNITY INS. CO. v. GANNON et al.

### No. 2520.

Court of Civil Appeals of Texas. El Paso.
April 2, 1931.

Rehearing Denied May 7, 1931.

Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Wm. M. Cramer and R. H. Vogel, both of Dallas, and J. B. Cotten, of Crane, for appellees.

PELPHREY, C. J.

Appellee Charles Gannon was, on July 11, 1929, in the employ of the Magnolia Petroleum Company, as a roustabout on the Magnolia Petroleum Company-Hardwicke lease in Crane county, Tex.

Magnolia Petroleum Company was a subscriber under the Workmen's Compensation Act of Texas (Vernon's Ann. Civ. St. arts. 8306–8309), carrying a policy with appellant, Texas Indemnity Insurance Company.

Appellee filed a claim with the Industrial Accident Board in which he claimed to have received injury to his eyes, throat, mouth, bronchial tubes, lungs, and other members of his body from gas escaping from a tank which he was tearing down.

Appellee, being dissatisfied with the award made by the Industrial Accident Board, filed this suit in the district court of Crane county.

In his petition appellee alleged that on or about July 11, 1929, he was working near a battery of tanks which contained and emitted poisonous gas; that he breathed and inhaled said gas; that his nose, mouth, bronchial tubes, and lungs were burned and irritated thereby, causing his kidneys and digestive system to be irreparably damaged; that the functions of his heart and blood stream were impaired; that he suffered a loss of weight of 25 pounds; that he lost his appetite, was unable to sleep, and suffered from a general anæmic condition; that he developed tuberculosis, and is totally and permanently disabled.

Appellant answered by a general demurrer and a general denial.

In response to special issues, the jury found that appellee sustained an accidental injury on or about July 11, 1929; that such injury was sustained in the course of his employment with the Magnolia Petroleum Company; that such injury resulted in total incapacity; that such incapacity is permanent; that a manifest hardship would result from the payment of compensation in weekly installments; that appellee's average daily wage was $5; and that his physical condition is not the result of an occupational disease. Judgment was rendered for appellee in the sum of $5,-874.82, against the Texas Indemnity Insurance Company, and it has appealed.

### Opinion.

Appellant's first six propositions are to the effect that there was no evidence that the injury resulted in total incapacity to appellee, or that such total incapacity was permanent, and that, appellee's own evidence showing that he was at the time of trial employed in a gainful occupation, the evidence was insufficient to sustain the findings of the jury that he was totally and permanently incapacitated.

We have carefully studied the evidence introduced by appellee, and think it is amply sufficient to present both issues, and that, if believed by the jury, supports their findings.

Appellee's testimony as to how the accident happened and the results therefrom reads:

"I sat around there all during the noon hour and tried to work again that afternoon, and I couldn't; I went in at five o'clock and went to bed; I couldn't eat my supper, and I didn't eat any breakfast; I vomited during the night and in a week or a few days I developed a cough, and kept vomiting and coughing up blood, and my condition has gone down since and now my chest hurts me in here, and my throat here (indicating) hurts me, and my chest now hurts all the time and now and then a pain goes through my heart, every day or two, sometimes two or three times a day, and when I exert myself I give out of breath and I can't do any heavy work at all. Whenever I try to do heavy work now I feel exhausted, get nervous and weak, and I have to sit down and rest, and I turn blind, see black spots ahead of me, and I have a headache a good deal. As to how long those spells last when I get one of them: 'sometimes an hour or two.' Before the accident I weighed between one hundred and eighty-five and one hundred and ninety pounds. I weigh about a hundred and sixty pounds now. Before the accident I had a good appetite, and since that time I haven't had any appetite at all. Before that time I rested good at nights, I don't rest any at all now at nights. I get up in the mornings now feeling about as tired as I did when I went to bed. * * * In about a week or two after I was gassed I noticed I was losing weight, and I went down gradually. I have been weighing about a hundred and sixty for the last four months. I have experienced trouble with my kidneys since that accident out there. They do not act the same as they did before the accident; they keep me awake at nights and hurt a good deal. I have to get up at nights with them; I have to get up three or four times a night. That has been my condition since that accident out there. I never had any trouble at all with my kidneys before that time. * * * In my present condition I am not able to work at the same class of work I was doing before the accident. I have worked at lighter jobs since that time. As to how long I have worked at these other jobs since that time; 'about fifteen or sixteen weeks altogether.' During that time I didn't feel like working; I did not feel like doing anything. I worked at that time because I either had to work or starve. During that time, during the time I worked I was in pain. I suffered pain in through my chest and my throat. I do not feel like I did before I had that accident. I have tried to do the same kind of work I did before I had the accident. I was not able to do the same kind of work that I did before I had the accident. As to what my trouble was: 'I just wasn't physically able to do that kind of work.' My breath was short; I can't hardly breathe whenever I try to do heavy work or exert myself; I exert myself and I give out of breath, and I have those spells that I told you about with my head and eyes. I still cough up blood once in a while. That happens about once a week, or sometimes twice in a week, or whenever I exert myself at any kind of hard work I have a bad coughing spell and cough up blood. Whenever I exert myself it seems like my stomach turns right over and makes me sick at my stomach, and causes me to vomit. * * * As to what the condition of my heart is now: 'My heart appears to be weak, and every few days, or every day, sometimes two or three times a day, there is a pain shoots through it, and seems like it takes a jumping spell, and flutters and jumps in there, then stops, then another pain shoots through it.' As to how often that happens: 'If I exert myself it happens pretty often, but if I don't, maybe it will go two or three days without affecting me any.'"

Dr. Cooper testified:

"I have examined Mr. Gannon twice professionally. When I examined him the first time I went all over him with reference to his entire body, and examined his chest well. * * * From that examination I found a dullness in the left lung, dry rales, and a disturbed heart action. * * * In the condition he was any hard work would be depressing on his heart, and also his lungs. That would undermine his health. * * * I have examined him since that time. If I am not mistaken I examined him either Monday or Tuesday of last week. The best I could determine he was in just about the same condition at that time as he was in January when I examined him. I did not find any special change in his condition either way. As to whether or not I would say the condition I found him in on the two examinations would be permanent; 'It had been permanent from January until June, there had been no perceptible change in his condition. For him to be put to a task would cause pain in his lungs, and also a pain around his heart, and maybe in his heart.' * * * As to whether I would say he is totally and permanently dis-

abled for oil field work: 'I would say he is totally and permanently disabled for that work.' * * * As to what effect it would have on him if he had gone where there wasn't any gas and had done manual labor: 'well, we will say he goes two hundred miles or two thousand miles from any gas or goes to digging ditches—the heart was in a weakened condition where it failed to compensate properly—what I mean by that is it is labored for existence, and his lungs inflamed to an extent it was difficult for him to breathe, and there were dry cells in there, and giving him a great deal of pain when he got a deep breath, naturally we all know that when a man gets in that condition and try to do manual labor he is knocked out, he cannot work. As to whether or not the effect would be, it would put him where he could not work, he could not.' "

Dr. R. E. Bledsoe, who made an X-ray of appellee's chest, testified that he formed the opinion from interpreting the X-ray photographs of appellee's chest that he was suffering from "pulmonary tuberculosis."

Dr. J. P. French testified that he examined appellee, and that from his examination he formed the opinion that he was unable to work at that time; that he considered the condition permanent; that he considered him totally disabled to do hard manual labor, as that of a roustabout in an oil field; and that he considered that condition permanent.

From the above testimony we are of the opinion that the question of whether appellee had been totally and permanently disabled by the injury was for the jury, and that the fact that he had done other lighter work and was regularly employed at the time of trial would not, as a matter of law, preclude him from claiming such total and permanent disability. Ætna Life Ins. Co. v. Bulgier et al. (Tex. Civ. App.) 19 S.W.(2d) 821; Texas Employers' Ins. Ass'n v. Knouff (Tex. Civ. App.) 297 S. W. 799; Home Life & Accident Co. v. Corsey (Tex. Civ. App.) 216 S.W. 464.

The case of Lumbermen's Reciprocal Ass'n v. Coody et al. (Tex. Civ. App.) 278 S. W. 856, cited by appellant, presents quite a different state of facts from those here. There, appellee received a broken arm while employed as foreman, and continued to perform the services and received his full wages as such during the time for which he claimed compensation. There was no evidence as to reduced earning capacity, while here appellee, if his statement and those of the physicians are to be believed, is suffering from tuberculosis, has a weak heart, coughs up blood, has trouble with his kidneys, suffers from sleeplessness, and has pains in his lungs and heart whenever he exerts himself.

■ Dr. French testified that appellee, when he went to him, told him that he was strong and healthy and weighed about one hundred and eighty-five pounds. Appellant contends that its objection to this statement was improperly overruled; it being a narrative statement and hearsay. This contention is sound, but in the case at bar we fail to see how the admission of the statement in any manner prejudiced the rights of appellant.

The fact that he was in good health before the accident was shown by the character of work he was doing and by the undisputed evidence. That he weighed 185 pounds before the accident was also undisputed. Aside from that, however, there was an abundance of evidence showing extent of the injuries to appellee aside from the fact of his weight before the injury. If there was any error in the admission of the evidence, we think it was harmless.

■ The same is, in a measure, true as to his statement to Dr. Cooper that he had been gassed. Aside from the notation in the time book as testified to by the witness Bradley, there is no evidence contradicting the testimony of appellee as to being gassed, and that notation merely refutes the claim of appellee that he was cutting down tanks on July 11th. It shows, however, that he was so engaged on the 15th.

The theory upon which appellant appears to have depended in the trial court was that appellee had not been totally and permanently incapacitated, and we fail to see how the introduction of the statement to Dr. Cooper could justify a reversal.

■ We find no reversible error in the admission of the testimony of Drs. French and Cooper, because their opinions may have been in part based upon the above statements made to them by appellee.

■ The trial court permitted plaintiff to propound to Dr. Woodward a hypothetical question which appellant contends was not properly predicated on the facts.

We find it to be true that some of the facts assumed in the question were not established by the evidence, but, on the other hand, appellant's objection was not sufficiently specific for purposes of review. Schaff v. Shepherd (Tex. Civ. App.) 196 S. W. 232 (writ refused). The objection made to the question was that "the same was not properly predicated on the facts and evidence in the case," and nowhere calls the attention of the court to the particulars in which the facts differ from the question.

■ Appellant propounds to Dr. Wood the following question: "Suppose a man, normally healthy and apparently in good shape, should be subjected to one inhalation of gas sufficiently concentrated to knock him out, to cause him to lose consciousness, to cause him to remain unconscious for a short while,

but not so severe as to prevent him continuing on working as a roustabout, without any loss of time, in your opinion would or could such an inhalation of gas cause a permanent injury to that man's lungs?" The question was objected to, and the objection sustained.

Appellant now contends that, the witness Bradley having testified that appellee performed his duties as a roustabout until August 2d, and that he knew nothing about appellee claiming to have been gassed until after he was discharged, Hinde, who worked with appellee, not having heard of the gassing of appellee, and plaintiff's own testimony that he stayed on the job the remainder of the day after he was injured, was a sufficient basis upon which to predicate the question.

We cannot agree. The question as propounded placed no limit on the question of loss of time or the length of time appellee continued working as a roustabout. If it had been framed assuming that appellee continued working as a roustabout, without any loss of time, until August 2d, it would certainly have been a proper question, but, as propounded, it assumed that appellee had continued working as a roustabout, without any loss of time, from the date of injury until the time of trial, and such a state of facts was not supported by the evidence. Appellee was not working as a roustabout at the time of trial, and, according to his testimony, which was undisputed, he had worked only 15 or 16 weeks between August 2, 1929, and June, 1930. The evidence was properly excluded.

We have carefully examined the record and considered the questions presented by appellant, and have concluded that none of them justify a reversal of the judgment. The several assignments are overruled, and the judgment is affirmed.