**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**J. D. JENKINS, Appellee.**

No. 7144.

Court of Civil Appeals of Texas.

Amarillo.

April 23, 1962.

Rehearing Denied May 28, 1962.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Yates & Yates, Webb, Schulz & Stokes, Abilene, for appellee.

NORTHCUTT, Justice.

This is a Workman's Compensation suit. This action was brought by J. D. Jenkins against Texas Employers' Insurance Association, workmen's compensation insurance carrier, to set aside an award of the Industrial Accident Board. It is the contention of Mr. Jenkins that on January 29, 1960, while he was working for Strain Brothers on a road job in Wheeler County that he had a heart attack which was caused by over-exertion in the course of his employment. In answer to the special issues submitted by the court, the jury found that plaintiff on the occasion in question sustained an injury; the injury resulted from an accident; that such injury was sustained in the course of his employment with such employer; that such injury naturally resulted in his incapacity to work; that such incapacity to work was total; that such total incapacity was temporary; that such total incapacity continued for 313 weeks; that such total incapacity began on January 29, 1960; that such incapacity to work was partial as a natural result of such injury from the termination of the total incapacity; that such partial incapacity would be permanent; that the beginning date of such partial injury was January 29, 1960 and that the average weekly wage earning capacity during existence of such partial incapacity was $70.00 per week. Judgment was entered for the plaintiff. From that judgment the defendant perfected this appeal. For convenience the defendant will be designated as appellant and the plaintiff as appellee.

By appellant's first two points of error it is urged there is no evidence and insufficient evidence to sustain the conclusion of a compensable injury. There is no question but what appellee had a heart attack while he was working for his employer. Appellee was bursting out and thawing out the road bed, and testified as follows:

"Q. Okay. Now, on January 29th, 1960, just tell the jury what happened to you. A. Well, we had been bursting out that frozen ground, and we had got about a mile and a half of it bursted out the day before, and the next morning I went and laid in half of it. See, there was another blade helping, but the foreman sent him somewhere else on another job, so that evening I started laying in the other half mile, or three-quarters of a mile, half of it; it was something like three-fourths of a mile, I imagine, and along about two o'clock, I pulled out at the end and started making my turn and the road was so narrow I couldn't turn in the road, I had to use part of the right of way to turn, and my wheels slid off into the ditch and when it did, the wheels cut right quick and jerked me up and this pain hit me in the chest. I sat there a little bit and I thought 'Well, I'll go ahead and make—complete my turn,' so I backed out in the road there and there was a roller boy there and he come up and asked me what was wrong, and I said 'I hurt myself', I said, 'I believe you ought to carry me down to the foreman, I might have to go to the doctor', so he did carry me down to Mr. Price, and Mr. Price carried me to this hospital here at Wheeler."

Immediately after the attack appellee was taken to the hospital and Dr. Nicholson was the first doctor to treat him. Dr. Nicholson testified appellee was in a pretty bad shape and after a quick examination he started using emergency procedures. Doctor placed him under oxygen and gave him a hypo for severe pain and heart stimulant and later ran an electrocardiogram. Dr. Nicholson diagnosed the

appellee's condition as coronary occlusion and testified as follows:

"That attack, I think, was caused from severe exertion, from the history, and from my examination of him. I found no other physical condition that would suggest disease."

■ Dr. Estes, who examined appellee only for the purpose of testifying, diagnosed the appellee's ailment as that of coronary occlusion resulting in myocardial infarction. Dr. Estes thought the exertion was the cause of the coronary. Dr. Bragdon testified that the electrocardiogram showed evidence of a fairly recent myocardial infarction. There is other evidence especially as to the exertion required in the particular kind of road work appellee was doing at the time in question. Appellee had always been a healthy man. We think there was sufficient evidence to sustain the conclusion of a compensable injury. It is stated in the case of Traders & General Insurance Company v. McDaniel et al., Tex.Civ.App., 305 S.W.2d 659 as follows:

"We are unable to agree with the appellant's construction or interpretation of the testimony. The witness's opinion that the work in which the deceased was engaged at the time of his death was such as entailed more than ordinary physical exertion is undoubtedly a matter of medical knowledge. We would not hesitate to say it is a matter of such common knowledge that a court might take judicial notice of it. Whether it may have precipitated the heart attack is another thing. The witness said that it did. The weight and credibility of his testimony was for the jury to determine. The appellant has apparently failed to consider that this witness had previously stated on cross examination that he based his opinion of the coronary occlusion upon various objective manifestations at the time of examination of the deceased, one being that

the body was cyanotic, evidencing a bluish or purplish discoloration of the skin due to lack of oxygen in the blood stream. Again, the conflict, if any, was for the jury's determination. We hold the evidence amply establishes the appellees' theory of death resulting from an accidental injury in the course of employment by reason of overexertion and strain. Texas Employers' Ins. Ass'n v. Talmadge, Tex. Civ.App., 256 S.W.2d 945, n. r. e., and the cases cited. Appellant's first four points are overruled."

See also Texas Employers' Ins. Ass'n v. Talmadge, Tex.Civ.App., 256 S.W.2d 945; Carter et al. v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 by the Supreme Court. We overrule appellant's first two assignments of error.

■ By appellant's third assignment of error it is contended there was a material variance between the pleadings and the proof. The pleadings show appellee was working a maintainer on frozen ground and the strain of operating the heavy equipment caused him to suffer a heart attack. The variance relied upon by appellant is where appellee testified that while he was turning the maintainer around the wheels cut right quick and jerked him up and the pain hit him in the chest. He did not say the jerk caused a heart attack but that was when he felt the pain. See the evidence listed above. The appellant's third point is overruled.

Appellant's fourth and fifth assignments of error complain of the admissibility of Dr. Nicholson's testimony about appellee's statement with respect to the manner of the alleged accident and as to the appellee's attorney's argument as sustaining appellee's credibility. The statement made by the appellee to Dr. Nicholson to which appellant objected is as follows:

"A. He stated he had been working with heavy road machinery, on roads that were coated with a heavy layer of ice and it of a necessity

caused him to use great exertion and at times would jerk him from one side of the machine to the other; that was, on the seat when they would jerk loose from the ice, and that during the time he was doing this, he felt a severe pain in his side and began to breath very difficult and—well, he said he went out. Of course, I would call that a collapse."

There was other testimony to the same effect as the history given to the doctor by appellee and was disputed by no one. It was held in the case of Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170 by the Supreme Court as follows:

"Over defendant's objection that such statements were not res gestae and were hearsay, the trial court permitted Dr. Griggs to testify to what plaintiff told him he and the others had eaten for dinner, made some time after the occurrence to which they related. These were made while plaintiff was violently ill from some cause. The same facts were testified to by other witnesses and disputed by none. It sufficiently appears these statements were made as part of the history of plaintiff's illness, for the purpose of enabling the attending physician to make a diagnosis of and to treat same, and as the basis of his opinion as to the cause of such illness. From such, and the symptoms, Dr. Griggs diagnoses the case as ptomaine poisoning. It is not an open question in Texas that such evidence is admissible under the above facts and over a general objection. We quote: 'We find no error in the action of the court in permitting the physician who attended Mrs. Smith during her illness to state what she told him while he was treating her, about her exposure at the place where she left the train, in connection with his own opinion as to the cause of her sickness. The statement was made as the basis of the doctor's opinion, and not as independent evidence to establish the fact of exposure; even had the latter been the purpose, it would furnish no ground for the reversal of the judgment, as both the wife and the husband had, as witnesses, themselves fully stated every fact upon the subject, and there was no opposing evidence with regard to the circumstances attending their leaving the train, and the exposure that followed it.' Pullman Palace Car Co. v. Smith, 79 Tex. 468, 14 S.W. 993, 994, 13 L.R.A. 215, 23 Am.St.Rep. 356.

"It is stated in 67 A.L.R. p. 18: 'It is generally, though not universally, held that statements by an injured or diseased person to a physician as to past matters, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion.' "

That portion of the argument made by appellee's attorney complained of by appellant is as follows:

" 'That doctor, Dr. Nicholson, is in the best position of anybody to judge what caused this. Why? Because he saw the man right then, and he could judge all the factors of his physical appearance. He could make up his mind from the way he looked. He could make up his mind from the way this man looked, whether or not something brought about his exhaustion and strain, and then he had proof of asking the man right then for his history when it was fresh in his mind, when the man had every reason on earth to give him history just as it occurred * * *.'

" 'Mr. Wilson (Interrupting) We urge to that argument, if it please the Court, the objection urged, which was urged to the examination of Dr. Nicholson upon that point; that is to say, that the examination was improper in its hearsay and self-serving

character, and the argument is similarly improper.'

"THE COURT: I will overrule the objection.

"MR. WILSON: Note our exception.'

"Bill of exception number two records the following argument, objecting and ruling:

" 'MR. WEBB: The point still remains that truth sits upon the lips of a dying man. When you bring a man into a hospital who is having a heart attack, and when the doctor asks him what brought this on—may Mr. Wilson have his same objection to all of this so I can continue without being interrupted?

"THE COURT: Yes

"MR. WILSON: Thank you.

"MR. WEBB: When a man comes into the doctor and is having a heart attack and is under oxygen and struggling to stay alive, if that man is going to tell anybody the truth, in his own self interest, if he wants to live, he tries to tell that doctor everything right then and right there, won't he? That is what happened here. Dr.' Nicholson took a history from this man right then and he formed 'the opinion that this man's heart attack was caused by the strain of the work he was doing. This is not a doctor we picked out; that is not a doctor that he came to see and told what happened sometime later; that is the doctor they took him to when they drug him out of the pick-up and hauled him into the hospital, the doctor that treated him and saved his life, and one that has no reason on this earth, Lady and Gentlemen, to tell you something he didn't believe, and surely after fifty years of dealing with this, he would be qualified.' (Tr. pp. 49, 50)."

We do not believe this argument is reversible error. We overrule appellant's fourth and fifth points of error.

■ For the purpose of discussion, appellant combined its sixth, seventh, and eighth assignments of error. These three assignments concern the admissibility of evidence; the court's charge and the argument of counsel. As to the admissibility to certain evidence being in error, one witness was permitted to testify that you can see a man picks up 100 pounds of weight day in and day out without any apparent trouble, and nothing unusual about it, and then at some time he picks up that 100 pounds and hurts himself. The only connection that this evidence would have with the present case would be just another way of calling to the attention of the jury that the appellee might do the work he was doing for a period of time and then finally be injured in the same work. From a logical standpoint, it might have the connection of explaining what could happen. If such testimony was inadmissible, we think it was harmless error to admit the same. The main difference in the contention of appellant and appellee is as to the test of what constitutes compensable injury. Appellant contended that to meet the test of a compensable injury something unusual or out of the ordinary was required, that unusual physical exertion or over-exertion, as distinguished from ordinary exertion, was required, and that, if appellee's heart attack was the product of gradual development, coupled with ordinary and usual exertion, there was not compensable injury. The contention of appellee was that the real test was whether the man does something and it hurt him, not whether it is unusual and hurts him. The record in this case clearly shows that appellee at the time here in question was not doing his usual kind of work but was unusual and harder work, and the evidence clearly shows more exertion would be used in this unusual work. If an injury is shown to be received by an employee while he is acting within the

course of his employment and such injury is the result of a risk or hazard of the employment it is compensable under the Workmen's Compensation Act. Aetna Insurance Company v. Hart et vir, Tex. Civ.App., 315 S.W.2d 169, and the cases there cited; Carter et al. v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 by the Supreme Court. The court's charge as to injury has been repeatedly approved. Appellant's sixth, seventh, and eighth points of error are overruled.

The jury found the appellee would be totally incapacitated for 313 weeks; that such total incapacity was temporary and that appellee (after the 313 weeks) would be permanently partially incapacitated. The court submitted Special Issue No. 14 as follows: "What do you find, from a preponderance of the evidence, has been, or will be, the average weekly wage earning capacity, if any, of J. D. Jenkins during the existence of such partial incapacity, if any?" The jury answered: "$70.00 per week." Appellant by its ninth point of error contends the court improperly subjected appellant, rather than the appellee, to the burden of proof with respect to the amount of appellee's recovery for partial incapacity. It was undisputed, and the court so found, that application of the statute to the facts to which the parties stipulated produced an average weekly wage of over $140.00. It is not a question of whether the evidence was sufficient to sustain the verdict of the jury in answer to that special issue; but the assignment of error only deals with placing of the burden of proof. It was held in the case of Employers Reinsurance Corp. v. Wagner, Tex.Civ.App., 250 S.W. 2d 420 (N.R.E.) the burden was on appellee to prove that his average weekly wage earning capacity after the date of his claimed injury was less than his weekly wage at the time he was injured. Appellant did not offer any evidence as to appellee's weekly wage earning capacity after appellee's injury. By some means, in the minds of the jury, the jury found the average weekly earning capacity while appellee was partially incapacitated was $70.00. We are not called upon to pass upon anything other than whether the court misplaced the burden of proof, and we cannot so hold. Finding no reversible error the judgment of the trial court is affirmed.