**AETNA CASUALTY & SURETY COMPANY,**
Appellant,

v.

**T. W. SCRUGGS,** Appellee.

**No. 266.**

Court of Civil Appeals of Texas.

Corpus Christi.

March 9, 1967.

Rehearing Denied March 30, 1967.

O. F. Jones, of Guittard, Henderson, Jones & Lewis, Victoria, for appellant.

L. DeWitt Hale, Corpus Christi, for appellee.

## OPINION

GREEN, Chief Justice.

This is a workmen's compensation case. Appellee T. W. Scruggs alleged that on February 26, 1960, while engaged in his duties for his employer DuPont in lifting and handling heavy steel reinforcing rods he sustained severe strain and injuries proximately causing serious damage to his heart, and resulting in total and permanent disability.

The jury in answer to special issues Nos. 1, 2, and 3, found that (1) appellee sustained an injury on or about February 26, 1960, (2) which was accidental, and (3) which was received in the course of his employment with DuPont. The jury further found such injury to be the producing cause of temporary total disability for a period of 26 weeks from February 26, 1960, and permanent partial disability thereafter; and that appellee's incapacity was not solely the result of a pre-existing heart trouble and the natural progress thereof.

Based upon the verdict of the jury and certain stipulations of the parties, judgment was entered for appellee for $12,623.-81, of which a fee of 30% was awarded his attorney.

Appellee testified that after having successfully passed a pre-employment medical examination, he went to work for DuPont as an iron worker at its Victoria County plant in early February, 1960. Prior to this occasion, he was in good health, and had never had a heart attack, to his knowledge, and had never been in a hospital. He was at the time 62 years of age. About 2:30 P.M. on Friday, February 26, 1960, he and another employee, Parker, were removing heavy steel reinforcing rods 40 feet long and a little less than one inch thick from a bundle. This bundle of rods had become twisted at one end, making it necessary, in order to extricate an individual rod, to pull at it rather vigorously, jerking and popping it with considerable exertion. As he was pulling and jerking on a rod, he stated, the rod came loose, and something went wrong with him inside. He suddenly felt severe pain in his chest, accompanied by shortness of breath, and he was forced to stop working and sit down. The sharp pains spread into his left arm. He was unable to work, and his foreman took him in a truck to the company first aid station, where he was examined first by a nurse, and then by Dr. McGlothlen, the DuPont doctor. Suspecting heart trouble, he gave appellee an E.K.G., which except for an enlargement on one side of the heart disclosed nothing abnormal. Dr. McGlothlen released him and since appellee was going to his home in Corpus Christi for the weekend, suggested that he see a doctor there.

Appellee was unable to perform any more work that afternoon, and at 4:30 P.M. he and Parker left in the latter's automobile for their homes in Corpus Christi. During this ride appellee continued to suffer severe chest pains, which became more intense as they crossed the high bridge leading into Corpus Christi. He attended a labor union meeting that night, but had to leave early because of pain in his chest. The next morning he was taken to a doctor, who examined him and prescribed medicine for his suffering. That afternoon he had a recurrence of the severe pains, lost consciousness (awakening three days later) and was taken to Thomas-Spann Clinic in Corpus Christi, where he was hospitalized. He remained in the hospital for four weeks under the treatment of Dr. Thomas. He then, for reasons of economy, moved to Nixon to live with his wife's daughter, where he remained to the date of trial. During this period he was under constant care and treatment of Dr. Sam Nixon. He has not been able to obtain and retain employment of any substantial nature since February 26, 1960.

Three doctors gave evidence on trial, Dr. Sam Nixon for appellee, and Dr. Hicks and Dr. McGlothlen as defense witnesses. Dr. Nixon testified through deposition taken in April, 1964, by answers to

written interrogatories. He started treating appellee on May 25, 1960, in Nixon, Texas, and had been regularly attending to him since that date. The history furnished him was consistent with appellee's testimony outlined above. He ran an E.K.G. on appellee on May 31, 1960. Dr. Nixon expressed the opinion (in answer to interrogatory No. 25) based on his examination and the electro-cardiogram, that appellee had at that time arteriosclerotic heart disease with coronary artery disease manifested by myocardial infarction[1] and angina pectoris, and that such findings were consistent with the history as given him by appellee. He said that physical effects of a coronary occlusion do not invariably show up on an E.K.G. taken immediately after the occurrence. In his opinion heavy physical exertion can cause or contribute to the onset of a coronary occlusion, (answer to No. 32) and in answer to a lengthy hypothetical question (No. 33) which assumed as true facts taken from the evidence, stated as his opinion that the heavy manual labor being performed probably caused, brought about, triggered or contributed to the coronary occlusion. He testified, based on his opinion from his own examination and treatment of appellee for four years, that appellee would not ever be able to obtain and retain employment requiring heavy manual labor.

In answer to cross-interrogatories, Dr. Nixon expressed the opinion that most coronary occlusions do not occur without any relation to physical activity, nor to his knowledge, do they usually occur while the patient is at rest. We call attention to this, since there appears to be conflict between him and defense medical experts on this point.

We have read and considered the testimony of appellant's medical witnesses, Dr. McGlothlen, DuPont's plant physician and Dr. Hicks, a heart specialist. Both were of the opinion that a coronary occlusion is not usually caused by exertion, but more frequently occurs during rest, although angina is generally the result of effort or exertion. Both testified that the hospital records established that appellee had sustained a coronary occlusion and resulting myocardial infarction, and that this was entirely consistent with his history of an enlarged heart and arteriosclerosis. They did not believe that the coronary occlusion occurred February 26th; however, neither expressed the opinion that the effort and strain of the work appellee was doing in the afternoon of February 26, 1960 was not connected wtih his subsequent disability; the most either would say was that there was no evidence that such was the case, and no evidence that appellee had suffered a heart attack, as differentiated from an attack of angina, while at work on the job. In this connection Dr. Hicks testified:

"Q If he has a pre-existing condition, if he has some coronary heart disease, even if it's unknown to him, is it your opinion, to recap this, the fact that he is pulling on something and exerting himself is probably not going to have any significance?

A As far as the production of an acute miocardial infarction, this is true. We don't have any medical evidence to really indicate, in thousands of cases, that exertion of this type produces an acute miocardial infarction.

If you are talking about chest pain or angina, that is a different situation. Because here, exertion does produce chest pain. This is when the coronary arteries are narrowed enough, but not closed, so that at rest, the patient's heart functions normally. The heart muscle gets enough blood supply,

---

1. Dr. Hicks, appellant's heart specialist, testified that a *coronary occlusion* is the blocking of the coronary arteries, and that this leads to a *myocardial infarction* or,

in lay language, a heart attack, i. e., that part of the heart muscle is deprived of its blood supply and such part dies.

but as he exerts, the heart rate picks up. The heart muscles needs more oxygen supply, but it can't get it.

This will produce what we call angina pectoris. Then it goes away as the patient rests, but that is an entirely different thing than an acute miocardial infarction where there is an actual block of the blood vessels.

It is then deprived of its blood supply and it could come from a couple of things, one is when one of these areas of hardening of the arteries can suddenly close off or actually a hemmorhage can develop in the lining of the blood vessel wall, which would completely close the artery, so the person would develop a heart attack.

We don't have convincing evidence from a medical standpoint that exertion produces miocardial infarctions.

This more often happens at rest."

He went on to say: "And in such cases as this, it is hard to tell whether the first episode is what we call angina or whether this was the first part of a heart attack or whether it occurred the next day." Dr. McGlothlen testified, and we consider this as significant, that when he released appellee from the first aid station after appellee had rested and his blood pressure had dropped to almost normal, he suggested that appellee see a doctor in Corpus Christi, explaining "that if this was, as I suspected, angina, he should be under treatment *to prevent it from going into a coronary occlusion.*"

On the trial, the complete hospital records, including a series of cardiograms and reports of Dr. Thomas, were admitted into evidence without objection. All of the medical testimony is to the effect that appellee while in the hospital was suffering from a coronary occlusion[2] which led to myocardial infarction. In this regard, we quote from appellant's brief:

"\* \* \* we do not dispute that Appellee Scruggs has, at some prior time, suffered a severe coronary occlusion. We think it was Saturday, February 27, 1960, just before he was hospitalized in Corpus Christi. We also do not dispute that he is presently disabled because of his heart condition. We take no issue whatsoever with Dr. Nixon's testimony concerning Mr. Scruggs' present condition, or even what he found when he first saw Scruggs. We do take exception to Dr. Nixon's attempt to testify on or about April 20, 1964, based on records and reports or statements of other doctors, and his treatment beginning May 31, 1960, that Appellee suffered a heart attack at 2:30 P.M., on February 26, 1960 which was directly produced by heavy physical exertion immediately preceding."

Appellant's brief sets forth fifteen points of error. The first is that the court erroneously admitted into evidence certain testimony and conclusions of the witness Dr. Sam Nixon which allowed appellee to establish that an accidental injury within the scope of his employment had occurred, the objections to such evidence being set forth in the point of error. Point No. 14 alleges error in refusing to strike such testimony on appellant's motion at the close of the evidence. The remaining points raise the question of the factual and legal insufficiency of the evidence to support the jury findings to special issues Nos. 1, 2, and 3, that on February 26, 1960, appellee received an accidental injury in the course of his employment with DuPont. In its opening statement to its discussion of its points of error in its brief, appellant says:

"All of these points actually relate to one main proposition, namely, without the testimony of Dr. Nixon there is no compe-

---

2. Differing from Dr. Nixon, neither of appellant's medical witnesses connected such heart condition with the occurrence on February 26, 1950.

tent probative evidence which will support Plaintiff's case and the Judgment in his favor, and that the Court erred in admitting Dr. Nixon's testimony to the end that an erroneous Judgment was rendered by the Trial Court. Accordingly, all of these points are briefed together."

The only testimony of Dr. Nixon placed in evidence to which appellant objected were his answers to interrogatories 25, 32, and 33. No. 25 asked the witness to state the nature of the physical difficulties affecting Mr. Scruggs revealed by the witness's examination and the electrocardiogram. This called for an answer as to the appellee's condition when he was under the care and treatment of Dr. Nixon, and after an E.K.G. was taken by him; and answer was given as heretofore stated. Since both of appellant's doctors testified that appellee had a coronary occlusion resulting in myocardial infarction, and since appellant has stated that it does not take issue with Dr. Nixon's testimony of Scruggs' present condition or his condition when the witness first saw him, error, if any, in the admission of the answer that appellee at that time had such heart trouble would not be harmful. However, we find that the witness, as the treating doctor, was qualified to answer the question, and the admission of the testimony was not error. Norris v. Lancaster, Tex. Com.App., 280 S.W. 574; Gray v. Bird, Tex.Civ.App., 380 S.W.2d 908, writ ref., n. r. e.; Texas Employers' Ins. Ass'n v. Rogers, Tex.Civ.App., 368 S.W.2d 21, writ ref., n. r. e.; Schooler v. State, Tex.Civ.App., 175 S.W.2d 664, writ ref., w. o. m.; Southern Underwriters v. Blair, Tex.Civ.App., 144 S.W.2d 641, n. w. h.

Although appellant most strenuously insists that direct interrogatory No. 33 and the answer thereto were improperly admitted in evidence, he likewise attacks the admissibility of No. 32, which actually was an introductory question to the following lengthy hypothetical No. 33. The trial court properly overruled appellant's objec-

tions of leading and not supported by the evidence to No. 32, which inquired whether, in reasonable medical probability, heavy physical exertion could cause or contribute to the onset of a coronary occlusion. The witness answered "Yes." He being qualified as an expert medical witness, and the inquiry being germane to the issue in the case, we see no error in the ruling of the court. Guthrie v. Texas Employers Ins. Ass'n, 146 Tex. 89, 203 S.W.2d 775, pp. 776, 778.

Question No. 33 reads as follows:

"Assume the following facts to be true. A man is in good physical condition with no indications or symptoms of heart trouble. For many years he has performed heavy manual labor. One day he is doing heavy manual labor involving the carrying of one-inch reinforcing rods about forty (40) feet in length and also involving the lifting of these rods. The work is heavy and the pace is rapid. As he attempts to lift one of these rods, he suddenly feels sharp, stabbing pains in his chest, radiating to his left side and into his left shoulder and arm. He sweats profusely. The pain is so severe he quits work and sits down and rests for a period of time. He then attempted to go to a doctor for treatment, but found that he was unable to walk due to the severe pain. He is taken to a doctor in an automobile. An electrocardiogram is taken but the results are negative. The pain subsides slightly and the man tries to walk back towards the job. The pain starts again. The man quits work and goes home and goes to bed. The initial onset of the pain occurred about 2:30 p. m.; about 8:00 p. m. the same day severe pain recurs for a short period of time, then subsides somewhat and the man does not receive medical treatment that evening. The following day about 6:30 p. m. the pain recurs with increased severity. His wife removes him from his home to a hospital where he remains hospitalized for approximately four weeks. Electrocardiograms revealed

that he sustained a coronary occlusion. Assuming the foregoing facts to be correct, please state whether in your opinion, based on reasonable medical probability, the heavy manual labor being performed by the man probably caused, brought about, triggered or contributed to the coronary occlusion which he sustained.

"Answer: He answers, I think so."

Appellant objected on the grounds that the question is leading, suggestive, and an incorrect assumption of the facts—that it assumes, based upon the testimony and findings of other doctors, the essential fact in the case that the plaintiff sustained a coronary occlusion on February 26, 1960 at approximately 2:30 p. m., and because of such fact, and because of the inclusion of findings of other doctors who had read the cardiograms, it includes matters which the witness could not but did take into consideration in making his answer, and that it assumes a state of facts at variance with plaintiff's testimony. The objections were overruled.

Appellant further objected to the answer as being too vague or ambiguous to be probative, which objection was overruled.

The trial court did not err in overruling appellant's objections to Question No. 33, and in denying his motion to strike based on substantially the same reasons, including the ground that the witness's opinion is based on information that is hearsay as to appellant.

■ If the question was in any way leading or suggestive, as most long hypothetical questions are apt to be, the admission of the testimony over such objection was within the sound discretion of the trial judge. Texas Employers' Ins. Ass'n v. Frazier, Tex.Civ.App., 259 S.W.2d 242, writ ref. n. r. e.

■ We have examined the facts assumed in the hypothetical question, and have compared them with the testimony in the statement of facts; and we do not find that such assumptions are at variance with the testimony. There appears to us to be evidence to support every assumption made in the question. It is not necessary that the hypothetical question embrace every fact in evidence; it is within the province of counsel to assume, within the limits of the evidence, any state of facts which he claims the evidence justifies and which enables the witness to formulate an intelligent answer and have the opinion of the expert upon the facts assumed. Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S.W. 667; Foreman v. Texas Employers' Ins. Ass'n, 150 Tex. 468, 241 S.W. 2d 977; Insurance Company of North America v. Pittser, Tex.Civ.App., 399 S.W. 2d 901, writ ref. n. r. e.; Highway Insurance Underwriters v. Matthews, Tex.Civ. App., 246 S.W.2d 214, writ. ref., n. r. e. If appellant desired to challenge the facts contained in the hypothetical question, it was its duty to do so on cross-examination. Shuffield v. Taylor, Tex.Com.App., 125 Tex. 601, 83 S.W.2d 955, 960(7); Decatur Cotton Seed Oil Co. v. Belew, Tex.Civ. App., 178 S.W. 607, writ ref.; Maryland Casualty Co. v. Allen, Tex.Civ.App., 22 S.W.2d 329.

The question does not assume that appellee sustained a coronary occlusion at any time on February 26; nor that the electrocardiograms revealed that he sustained such on that date. Appellee's case was not made to depend on the occurrence of a coronary occlusion while he was on the job February 26; his pleadings and evidence were to the effect that at about 2:30 p. m., February 26, 1960, while appellee was acting within the scope of his employment he sustained a strain and injury which contributed to or brought about the damage to his heart and to his resulting disability. Dr. McGlothlen on the afternoon of February 26 suspected appellee's trouble to be angina, and felt that it was necessary for him to be under treatment to prevent it from going into a coronary occlusion. As heretofore stated, it is conceded by appel-

lant that appellee has sustained a coronary occlusion, and myocardial infarction.

■ The objection made by appellant was insufficient to raise the question that it assumed a state of facts at variance with plaintiff's testimony, even if such were the case, since the burden was on appellant in objecting to specify to the trial court in what respect the question did not conform to the testimony, and this it failed to do. Schaff v. Shepherd, Tex.Civ.App., 196 S.W. 232, writ ref.; Texas Indemnity Ins. Co. v. Perdue, Tex.Civ.App., 64 S.W.2d 386, writ ref.; Texas Indemnity Ins. Co. v. Gannon, Tex.Civ.App., 38 S.W.2d 181, writ dism.; Texas Employers' Ins. Ass'n v. Melton, Tex.Civ.App., 304 S.W.2d 453, 461, writ ref., n. r. e.; Geochemical Surveys v. Dietz, Tex.Civ.App., 340 S.W.2d 114, 120, writ ref., n. r. e.

■ Interrogatory 33 did not inquire as to Dr. Nixon's diagnosis or opinion as the treating doctor of appellee; it was strictly a hypothetical question propounded to the witness as a qualified medical expert calling for his opinion on an assumed state of facts. Provided the facts assumed are properly supported by evidence, and sufficient to call for an intelligent answer, and we have so held as to this question, such hypothetical question was not subject to the objections, and the court did not err in overruling them. Foreman v. Texas Employers' Ins. Ass'n, 150 Tex. 468, 241 S.W.2d 977; Shuffield v. Taylor, Tex.Com.App., 125 Tex. 601, 83 S.W.2d 955, 960, opinion adopted by Supreme Court; Texas State Highway Department v. Fillmon, 150 Tex. 460, 242 S.W. 2d 172; Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S.W. 667; John Hancock Mutual Life Ins. Co. v. Stanley, Tex. Civ.App., 215 S.W.2d 416, 421; Highway Insurance Underwriters v. Matthews, Tex. Civ.App., 246 S.W.2d 214, 216, writ ref., n. r. e.

■ The question finally asked in No. 33 was, assuming the stated facts to be correct, whether in the witness's opinion, based on reasonable medical probability, the heavy manual labor brought about, triggered or contributed to the coronary occlusion which he sustained. The witness answered "I think so." This was a responsive answer to the question. The court did not err in admitting such answer. Texas Employers' Ins. Ass'n v. Talmadge, Tex.Civ.App., 256 S.W.2d 945, writ ref., n. r. e.; Aetna Insurance Company v. Hart, Tex.Civ.App., 315 S.W.2d 169, writ ref., n. r. e.; Texas Employers' Ins. Ass'n v. Jenkins, Tex.Civ.App., 357 S.W.2d 475, writ ref., n. r. e. Points One and Fourteen are overruled.

■ In considering the point of *legal* insufficiency, which raises a question of law, we consider only the evidence and the inferences therefrom tending to support the findings and disregard all evidence and inferences to the contrary. In passing upon the points of *factual* insufficiency, we consider all of the evidence and reasonable inferences. Garza v. Alviar, Tex.Sup.Ct., 395 S.W.2d 821. In applying such rules, we find that the answers of the jury that appellee sustained an accidental injury on February 26, 1960, while in the scope of his employment with DuPont, which is the only part of the verdict questioned by appellant, is supported both legally and factually by the evidence, and the remainder of appellant's points of error are overruled.

■ In its brief and oral argument, appellant took the position that in order to recover, appellee must prove that his heart attack occurred while he was at work on the afternoon of February 26. Appellant contends that under the evidence the coronary occlusion did not take place until just before appellee entered the hospital on the evening of February 27. However, it is actually immaterial when the heart attack, or coronary occlusion, happened if the evidence is sufficient to raise a fact issue that an accidental injury occurred on February 26 while he was within the course of his employment which triggered or set in motion a series of events which were the producing

cause of appellee's ultimate disability. That a strain or exertion is an accidental injury within the meaning of the Workmen's Compensation Law of Texas is not open for dispute. Hartford Accident & Indemnity Co. v. Gant, Tex.Civ.App., 346 S.W.2d 359, 363, a coronary occlusion case very similar to the instant case; Midwestern Insurance Company v. Wagner, Tex.Civ.App., 370 S.W.2d 779, writ ref. n. r. e.; United States Fidelity and Guaranty Co. v. Herzik, Tex.Civ.App., 359 S.W.2d 914, writ ref. n. r. e.; Mountain States Mutual Casualty Company v. Redd, Tex.Civ. App., 397 S.W.2d 321, writ ref. n. r. e. From Traders & General Ins. Co. v. Rooth, Tex.Civ.App., 268 S.W.2d 539, 541, writ ref., n. r. e., we quote:

"Compensation benefits can be awarded if the workman, as a result of job exertion, sustains hemorrhages, ruptures or heart attacks, notwithstanding the fact that predisposing factors contribute to the incapacity or death. Texas Employers Ins. Ass'n v. Smith, Tex.Civ.App., 235 S.W.2d 234; Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S.W.2d 956, W/E Dis.; Southern Underwriters v. Hoopes, Tex.Civ.App., 120 S.W.2d 924, W/E Dis.; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581."

In Texas Employers' Ins. Ass'n v. Rogers, Tex.Civ.App., 368 S.W.2d 21, writ ref., n. r. e., a heart case, the accidental injury occurred December 1, 1960, but the resulting heart attack did not take place until December 27, 1960. The court held the facts sufficient "to support the causal connection between the pain and physical strain caused by the rib injury with the heart damage." In Lyles v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 365 S.W. 2d 819, writ ref., n. r. e., the injury occurred July 13, 1959, and the injured party died of an acute myocardial infarction June 8, 1960. A doctor testified that the incident of July 13 incited the sequence of events that produced the heart attack eleven months later. Other medical testimony was to the contrary. The appellate court reversed a summary judgment for the defendant, stating that a fact issue was present. In Federal Underwriters Exchange v. Polson, supra, the difference in time between the injury and the heart stroke was seven months, and a judgment for plaintiff was upheld.

The matter of aggravation of a preexisting heart and arteriosclerotic condition was plead alternatively by appellee, raised as an issue by the testimony of the medical witnesses, and submitted to the jury without objection in the definition of the term "injury".

We agree with appellant that in a case such as this expert medical testimony should be presented to enable the court and jury to determine the issue of causation, Loper v. Andrews, Tex.Sup.Ct., 404 S.W.2d 300; Travelers Ins. Co. v. Blazier, Tex.Civ. App., 228 S.W.2d 217, writ dism., are cited by appellant on this proposition. Such evidence was introduced in this case.

All of appellant's points of error are overruled. The judgment is affirmed.