Cecil H. BURNS et al., Appellants,

v.

**BRIDGE ENGINEERING CORPORA-TION et al., Appellees.**

**No. 443.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 10, 1971.

Rehearing Denied March 31, 1971.

428 

W. G. Smith, Lott & James, Houston, for appellants.

Richard B. Miller, Baker & Botts, Houston, for appellees.

TUNKS, Chief Justice.

On the evening of April 16, 1965, four young men, David Lively, Jr., Joseph Boze, Larry Stephens and Christy Burns, each of whom was either 17 or 18 years of age, met in Pasadena, Texas. After some discussion they decided to drive to the west beach of Galveston Island to join a beach party of some of their high school friends. At about 8:00 o'clock p. m., they left for the beach in a car owned and being driven by David Lively. They stopped at South Houston and bought two six-packs of beer. They drank beer as they drove toward the beach. When they reached Galveston they stopped and bought more beer. There is some dispute in the testimony as to whether in Galveston they bought two more six-packs or a case of beer. After that purchase they proceeded on to the beach and joined the party. During the time they were at the party Lively and his three male companions continued drinking beer.

Nancy Baker, now Nancy Hammons, Evalon Hancock, now Evalon Barroso and Debra Lloyd, each of whom was either 17 or 18 years of age, were at the beach party. They had ridden to the beach from Pasadena with another young man who did not plan to drive back that night. The three young ladies did intend to return and were expected to be home by midnight. They made arrangements to ride back to their homes in Pasadena with David Lively and his companions.

Seawall Boulevard in Galveston runs parallel to and beside the beach. At the place in question it is a broad paved street with two lanes for traffic going each way and a parking lane on each side. It runs in directions which, for simplicity, will be called east and west. 61st Street in Galveston intersects Seawall Boulevard at a point beside West Beach and extends in a northerly direction for a distance of two or three miles to its intersection with Broadway Boulevard. Broadway Boulevard is the street leading, in a westerly direction, into the highway to Pasadena and Houston.

At the time in question 61st Street was under construction for repairs and improvement. The construction was being done by Bridge Engineering Corporation under contract with the State of Texas. The construction included the installation of a concrete culvert across 61st Street at a point ⁹⁄₁₀ths of a mile north of its intersection with Seawall Boulevard. On April 16, 1965, this culvert was only partially completed and the traffic going north on 61st Street was required to detour to the left around it.

At about 11:00 o'clock p. m., Lively and his six passengers left the beach to return to Pasadena. He drove from the beach onto Seawall Boulevard at its end some distance west of its intersection with 61st Street. Some or all of the young men were still drinking beer. As they proceeded easterly on Seawall Boulevard, Lively was driving at a speed estimated by passengers who testified at from 30 to 50 m. p. h. They passed a police car parked beside another car at the curb. Some of the witnesses testified that as they passed the police car the policeman flashed a light at their car. There was still beer in the car. They became alarmed that the policeman might stop them and find them, teenagers, in unlawful possession of beer. One of the passengers suggested that Lively turn off the lights on his car. He did turn them off and continued driving—there being some testimony that he increased the speed at which he drove. The lights of the car were still off when Lively turned left from Seawall Boulevard onto 61st Street. As he drove north on 61st Street, the lights of the car were still off until he got almost to the detour around the culvert under construction. Some of the passengers testified that when the lights were turned back on the car was about 30 feet from the culvert construction area. The car crashed into the culvert. Lively, Joseph Boze and Debra Lloyd were killed. The other passengers were seriously injured.

Christy Burns, Larry Stephens, Nancy Baker Hammons, Evalon Hancock Barroso,

each filed suit against Bridge Engineering Corporation for personal injuries. Their parents sued for medical expenses incurred. The parents of David Lively, Jr., Joseph Boze, and Debra Lloyd filed wrongful death suits against Bridge Engineering Corporation. All of those suits were, by agreement, consolidated into one case. A trial before a jury resulted in a verdict and judgment for the defendant. Christy Burns and his father, Larry Stephens, Nancy Baker Hammons and her father, and the mother of Joseph Boze have appealed. The others who were plaintiffs in the trial court did not appeal.

The first fifteen issues submitted to the jury related to the alleged primary negligence of the defendant Bridge Engineering Corporation. They inquired as to the defendant's failure to provide an adequate number of barricades marking the detour; failure to maintain such barricades; failure to provide adequate lights warning of the detour; failure to maintain such warning lights and failure to provide adequate detour signs, together with the usual appropriate issues as to negligence and proximate cause. The jury failed to find the defendant at fault in any of the particulars inquired about and did not answer the predicated negligence and proximate cause issues.

In answers to special issues nos. 16 through 28, the jury found the driver, Lively, guilty of acts and omissions of negligence which were proximate causes of the collision. Included in those findings were findings that Lively was under the influence of intoxicating beverage when he left the beach, which condition was a proximate cause of the collision.

In response to other issues, all of which were predicated on an affirmative answer to special issue No. 16, the issue inquiring as to Lively's intoxication, the jury found that all of the passengers, except one in whose behalf no appeal was made, knew, before getting into the car to return to Pasadena, that Lively's ability to drive was

impaired by his drinking and that the passengers appreciated the danger of riding with him under such circumstances.

In a number of other particulars the jury found some of the passengers negligent in failing to keep a proper lookout or failing to protest the manner or speed at which Lively was driving but the jury failed to find that any of those acts or omissions of negligence on the part of the passengers was a proximate cause of the collision.

The other special issues submitted were damage issues. All were answered, "0."

The appellants' points of error may be paraphrased as follows: Points 1 and 2: the trial court committed reversible error in permitting a toxicologist, over objection of plaintiffs, to answer hypothetical questions as to the alcoholic content of the blood of David Lively, Jr., and the intoxicating effect of such content.

Point 3: the trial court erred in submitting issues asking if some of the passengers failed to make such protest of the speed at which Lively was driving as would have been made by a person of ordinary prudence in the exercise of ordinary care.

Point 4: there was no evidence to support the submission of the issue inquiring as to whether David Lively was under the influence of intoxicating beverage, so that its submission was error.

Point 5: the submission of the issues inquiring as to the passengers getting into the Lively car with the knowledge that Lively was intoxicated was error because there was no evidence that Lively was intoxicated.

Point 6: the jury's failure to find the defendant negligent was against the preponderance of the evidence.

Mr. Floyd E. McDonald, a chemist and toxicologist employed by the Houston Police Department, was called as a witness. He testified to facts concerning his training and experience which fully qualified him as an expert on the subject of intoxication

caused by drinking alcohol. Before he testified in the presence of the jury the plaintiffs presented a motion in limine asking that he not be permitted to answer hypothetical questions as to the alcohol content of the blood of Lively and his male companions nor as to their intoxication because the witness had not made any test on any samples of their blood and there were too many variables involved to permit him to express an opinion as to the blood's alcohol content and the intoxication of the young men. This motion in limine was overruled by the trial judge. He was then asked, in the presence of the jury, the following hypothetical question:

"Assume a seventeen-year-old boy, weighing 140 to 145 pounds, who had eaten his evening meal at approximately 7:30 or 8:00 p. m., and had then commenced drinking at approximately 9:00 p. m., and thereafter drank, over a period of two hours, six cans of Lone Star beer. Assume further that this young man is in good health, has no known physical infirmities.

"Based upon that information, can you calculate the volume of alcohol that would be in his bloodstream after he had drunk those two—those six beers?"

Counsel for plaintiffs objected to that question in the following language:

"We would object to this hypothetical question and ask for a running objection to any more hypothetical questions on these facts, as it is our position that none of these assumed facts are in evidence in this case."

The objection was overruled, the court stating that plaintiffs "will have a continuing objection." In answer to the question the witness testified that under the hypothesis the alcohol content of the drinker's blood would be about fifteen hundredths of one percent. The witness further testified that by recognized scientific standards the driving ability of anyone whose blood had

such an alcoholic content would be significantly impaired.

The physical description of the hypothetical person included in the question propounded to McDonald was a fairly accurate description of David Lively, Jr. as taken from the testimony of some of the plaintiffs. The assumed beginning and ending times of the drinking were from about the time when the four young men were shown to have bought beer at South Houston, to the time of the collision. There was testimony that they began drinking the beer as they were driving to the beach and continued drinking up to the time of the accident.

There was no specific testimony that Lively drank exactly six beers, but there was evidence from which that fact reasonably could be inferred. The four young men bought either 24 or 36 beers. They bought it for themselves and not for others at the beach party. The girls did not drink any beer. There was testimony that one or two of the original twelve bottles were left when they stopped at Galveston to buy more beer. One of the boys testified that he drank two to four bottles while driving from South Houston to the beach and two to four more bottles while at the beach. There was testimony that Lively, too, drank some beer while driving to the beach and some while at the beach. There was testimony that he was a "cut-up" while at the beach, but the witness said that such was his usual manner of conduct. While at the beach he got his car stuck in the sand so that it had to be pushed. There was testimony that some of the beer they had bought was left at the time of the accident, but no testimony fixing the amount so remaining. From these facts proven it was reasonable to infer that Lively had drunk six beers. Particularly is this true since all of these facts were proven by the testimony of the plaintiffs, themselves.

▪ The trial court in ruling on the propriety of the hypothetical question has "considerable latitude" in determining

whether it is based upon a fair assumption of facts in evidence. Foreman v. Texas Employers' Ins. Ass'n, 150 Tex. 468, 241 S.W.2d 977, 980. It is not necessary to the propriety of such a question that it include a reference to all of the relevant facts in evidence nor that it be confined to facts proven with mathematical certainty. It may include inferences reasonably drawn from other facts proved and consistent with the theory of the party propounding the question. Aetna Casualty & Surety Company v. Scruggs, Tex.Civ.App., 413 S.W.2d 416, no writ hist.; Vol. II, McCormick & Ray, Texas Law of Evidence, Sec. 1403, p. 238. The trial court did not err in overruling plaintiffs' quoted objection.

The appellants in their brief argue also that the opinion testimony given by the expert witness, McDonald, as to the alcoholic content of the blood and the intoxicating effect thereof, was erroneously admitted because there are too many variables involved. The witness admitted that there were such variables. Alcohol would be more quickly absorbed into the bloodstream of one whose stomach was empty than in the bloodstream of one who had recently eaten. The speed by which alcohol in the blood is eliminated by the bodily processes of some people is greater than that in others. It takes a greater percentage of alcohol in the blood of some people than in others to produce significant intoxication. He testified, however, that he had made allowances for those variables in reaching his conclusion. He said, for instance, that scientific studies and experiments made over a period of years by the National Safety Council and the American Medical Association, in which studies and experiments he had participated, showed that the driving ability of some people was significantly affected when they had blood alcohol content as low as .04%, but that all people were affected when they had as much as .10%.

■ Expert opinion testimony is proper when the witness has scientific knowledge and training that permits him to draw a reasonable conclusion from a set of facts which conclusion is more reliable than the conclusions which might be drawn from such facts by a jury without such knowledge and training. If his opinion is reasonably calculated to help the jury in drawing a relevant conclusion from facts before the court, it is admissible in evidence. Vol. II, McCormick & Ray, Texas Law of Evidence, Sec. 1400, p. 233. Just as in the case of passing on the propriety of the form of a hypothetical question asked an expert, the trial court has broad discretion in determining whether the subject matter of expert opinion evidence is admissible. Kettle v. Smircich, Tex.Civ.App., 415 S.W.2d 935, no writ hist.

■ Of course the admission of the testimony of the witness, McDonald, as to the intoxication of some of the plaintiffs, even if such admission were erroneous, would, standing alone, be harmless error. This is true because the jury did not find the defendant to be guilty of any primary negligence. The drinking of some of the plaintiffs had no relevance to the issues on that matter. The appellants contend, however, that the admission of the expert's opinions so prejudiced the plaintiffs in the minds of the jurors as to affect their answers to the issues on primary negligence. We do not agree. There was so much testimony from the plaintiffs, themselves, as to the drinking by the boys and the manner in which the car was being driven, that the scientific testimony of McDonald would add little, if any, to the prejudicial effect of the other evidence.

■ As to each of the appellants the trial court submitted issues inquiring if he failed to make such a protest of the speed at which Lively was driving as would have been made by a person of ordinary prudence in the exercise of ordinary care. Appellants' third point of error is to the effect that such issues were erroneous because they assumed that Lively was driving at a dangerous speed. That point of error is

overruled. In the first place the evidence justified the assumption that Lively was driving at a dangerous speed. The most conservative estimate given by any of the plaintiffs who had testified was that Lively made the left turn from Seawall onto 61st Street at a speed of 25 to 30 m. p. h. and that, with his lights still out, he increased his speed after turning. Christy Burns, a few days after the event, gave the police a statement in which he estimated the car speed at 70 m. p. h. at the time it crashed into the culvert. Two police officers called as witnesses by the plaintiffs testified, without objection, that they also estimated the speed of Lively's car at 70 m. p. h. when it hit the culvert. In the second place, the errors, if any, in the form of the issues were harmless. While the jury answered the issues as to such contributory negligence in the affirmative, in each instance the following proximate cause issue was answered in the negative. Rule 434, Texas Rules of Civil Procedure.

On the basis of the evidence set forth above, appellants' points of error four and five, both of which are based on the proposition that there was no evidence that Lively was under the influence of intoxicating beverage, are overruled.

Appellants' sixth point of error relates to the jury's answers to special issues inquiring as to primary negligence. As stated above, the jury failed to find the defendant negligent in any of the particulars as to which issues were submitted. It is appellants' argument that the jury's response to those issues was contrary to the preponderance of the evidence and that the jury's answers of "0" to all of the damage issues indicates that its answers to the primary negligence issues were dictated by prejudice against the plaintiffs.

The contract between the defendant and the state under which the construction was being done included specifications as to the placement of barricades, lights and other warnings at the end of the workday. An engineer employed by the defendant on the construction of 61st Street testified that at the end of the workday on April 16, 1965, he inspected the various warning devices and found them to be placed properly. A few days after the accident he placed the barricades, lights and signs as he testified they were placed when he left the job site on the evening in question and took a picture of the installation. That picture was received in evidence. An inspector kept on the job by the state, whose duties included the inspection of the warning devices at the end of the day, testified that they were properly placed on the evening in question when the contractor left the job. The defendant employed a guard service company to check on the job site during the night. An employee of that company testified that on the night in question, after the defendant had left the job and before the accident, he had gone by the site and the warning devices were in place. He also testified that he had gone to the site a second time that night on which occasion he stopped to pick up a bottle lying on the street. When he did so he heard someone crying out and, upon investigation, discovered the accident. He testified that after the accident the warning devices were still in place.

A wrecker driver, called by plaintiffs as a rebuttal witness, testified that he, and not the guard service employee, was the first person to discover the accident. He testified, in substance, that the various barricades, flashing signals, flares and signs were not in place when he arrived at the scene. Pictures taken by the police officers at the scene after the accident show the absence or improper placement of the warning devices. However, before those pictures were taken, several wreckers and ambulances had arrived and driven inside the barricaded area. Numerous spectators had gathered at the scene. The jury could have believed that the placement of the warning devices had been disturbed be-

**434**

tween the time of the accident and the time of the taking of pictures by the officers.

■ Upon consideration of only the evidence relating to the primary negligence issues, it is clear that the jury's answers thereto were not so against the preponderance of the evidence as to be manifestly unjust. Argument is made, however, that the jury's answers of "0" to all of the damages issues are so contrary to the evidence as to demonstrate prejudice of the jury against the plaintiffs, which prejudice caused the adverse answers to the liability issues.

■ The jury's answers to the damage issues were clearly contrary to the evidence. The parents of the three minors who were killed sustained compensable damages at least to the extent of funeral expenses. The four minor occupants of the car who were not killed certainly sustained personal injuries producing damages. However, the jury's erroneous answers to the damage issues were immaterial. Southern Pine Lumber Co. v. Andrade (Tex. Com.App., op. adopted), 132 Tex. 372, 124 S.W.2d 334. Not only the jury's failure to find the negligence on the part of the defendant, but also its findings that all of the appellants got into Lively's car knowing that he was intoxicated and appreciating the danger of riding with him precluded any judgment for appellants. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607. Giving due consideration to the weight of the evidence that supported the jury's findings on the liability issues, we are of the opinion that the record, including the erroneous findings on the damage issues, does not demonstrate that the jury's answers to the liability issues were the result of undue prejudice against the appellants. It is to be noted that the answers to some of the liability issues, the proximate cause issues on contributory negligence, were answered favorably to the appellants. .

The judgment of the trial court is affirmed.