James J. CASEY et al., Appellants,

v.

Ernest BARKLEY, Jr., et al., Appellees.

No. 952.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1975.

Rehearing Denied Sept. 18, 1975.

Harry F. Maddin, Allison, Maddin, White & Brin, Corpus Christi, Merrill W. Russell, Jr., Greenwood & Russell, Harlingen, for appellants.

Finley L. Edmonds, Meredith & Donnell, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is an intersectional collision case. James J. Casey brought suit to recover damages allegedly sustained by him as a

result of a right angle collision between the truck he was driving and a truck and tank trailer owned by Barkley Feed and Seed Company and operated by Maximilliano Garza. Casey's truck was leased from Rollins Leasing Company. Following a jury trial in which the jury found primary and contributory negligence, the trial court entered a take-nothing judgment in favor of the defendants. Plaintiff Casey has duly perfected his appeal to this Court.

The collision occurred at the intersection of Highway 77 and Farm Road 70 between Robstown and Kingsville. Highway 77 is a divided highway consisting of two lanes in each direction. At the point of intersection of Farm Road 70, the roadway widens to four lanes to accommodate vehicles turning off and on Highway 77. Casey was driving his truck north on Highway 77. The speed limit at that time was 65 miles per hour. Garza was driving his truck east on Farm Road 70. As he was approaching Highway 77 northbound intersection, he was faced with a stop sign and traffic control device located over the center of the intersection. It contained a flashing red light for Garza and an amber flashing light on Highway 77 facing Casey.

Casey testified that he left San Benito, Texas, in the lower Rio Grande Valley en route to Jacksonville, Florida, carrying a cargo of 36,000 pounds of "swinging meat". He testified that his truck was governed at 58 miles per hour in tenth gear and that this was the maximum speed that the truck could attain. He testified that as he approached the scene of the accident, he was driving in ninth gear which would give him a maximum speed of 48 miles per hour. Casey testified that he first saw Garza at a point when Garza was crossing the southbound portion of Highway 77. The next time he saw Garza, he was approaching the intersection preparing to stop. He testified that for the next second or two, his attention was directed to the right to clear traffic from that direction. As he approached the intersection, he heard the sound of "somebody jamming a gear". Casey's truck

struck Garza's tank-truck on the rear right hand side as Garza was crossing through the intersection causing extensive damages and injuries.

Garza testified that as he was crossing the median between the two highway lanes, he was traveling at a speed of five or six miles per hour. He indicated that he looked to his right before he got to the stop sign. Garza testified that when he saw Casey, he thought Casey was pretty far back, but traveling better than sixty miles per hour. Garza then "rolled through the stop sign" into the intersection gaining speed as he went through. He stated that he was traveling 5 or 6 miles an hour when the accident occurred. The parties for both sides attempted to reconstruct the accident by the use of plats, photographs, diagrams, and expert testimony. The evidence shows that there were no skid marks from either vehicle leading up to the point of impact, but only gouge marks in the asphalt at the point of impact.

Casey alleged that Garza was guilty of certain acts of negligence, each of which was the proximate cause of plaintiff's damages and injuries. In addition, Casey alleged that Garza discovered and realized that Casey was in a perilous position at a time in which Garza could have avoided the occurrence in question by the exercise of ordinary care, which he failed to do. The trial court refused Casey's issues on discovered peril.

The jury found that Garza failed to keep a proper lookout; failed to yield to the Casey vehicle; failed to stop before entering the intersection; and that Garza failed to make such application of the brakes as a person using ordinary care would have made, each of which was found to be the proximate cause of the occurrence in question. In addition, however, the jury found that Casey was contributorily negligent. It found that Casey failed to keep a proper lookout; was driving at a greater rate of speed than a person using ordinary care would have driven; and failed to make

proper application of the brakes, all of which was a proximate cause of the occurrence in question. The trial court accordingly entered a judgment that plaintiff take nothing. Casey has duly perfected his appeal from that judgment to this Court bringing forward five points of error.

In appellants' first point of error, he contends that the trial court erred in refusing to submit a cluster of special issues which were his requested issues on discovered peril, for the reason that such issues were raised by evidence and should have been submitted to the jury. This necessarily raises a point of no evidence. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *McDonald v. New York Central Mutual Fire Insurance Company*, 380 S.W.2d 545 (Tex.Sup.1964); Rule 279, T.R.C.P. (1967). Whether a particular issue should be submitted is determined by the application of tests identical with those employed in determining whether an instructed verdict should be given. *Imperial Insurance Company v. Ellington*, 498 S.W.2d 368 (Tex.Civ. App.—San Antonio 1973, no writ); 3 McDonald, Texas Civil Practice § 12.08C (1970). This requires us to consider only the evidence and the inferences that may be reasonably drawn therefrom that are favorable to the appellants' issues on discovered peril and to disregard all of the evidence and inferences to the contrary.

The basis for recovery in a discovered peril case rests upon humane principals and public policy and not upon the negligence or dereliction of duty on the part of the injured plaintiff. The rule of law which allows recovery of damages under this doctrine is exacting. It is necessary for the plaintiff to prove: 1) that the defendant actually discovered and realized the perilous position of the plaintiff; and 2) that the discovered realization by the defendant was in time to have avoided the collision by the exercise of ordinary care and by the use of all the means at his command, consistent with his own safety. The burden is upon the plaintiff to establish

that the driver of the defendants' vehicle was guilty of violating each and all of these humane principles. The quantum of proof required to entitle a plaintiff to have the discovered peril issues submitted is evidence of such facts and circumstances, together with all of the reasonable inferences therefrom, as would constitute some evidence of probative force of their existence. *Gentry v. Southern Pacific Company*, 457 S.W.2d 889 (Tex.Sup.1970); *Texas & New Orleans Ry. Co. v. Hart*, 163 Tex. 450, 356 S.W.2d 901 (1962). *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952). It is not sufficient that defendant could have or should have realized the perilous position of the plaintiff, but rather, plaintiff must show actual discovery and realization by defendant in time to avoid the collision. *Gentry v. Southern Pacific Company*, supra; *Texas & New Orleans Ry. Co. v. Hart*, 163 Tex. 450, 356 S.W.2d 901 (1962); *Safeway Stores, Inc. v. White*, 162 Tex. 473, 348 S.W.2d 162 (1961); *Parks v. Airline Motor Coaches*, 145 Tex. 44, 193 S.W.2d 967 (1946).

The evidence is clear to us that after Garza saw Casey, he proceeded into the intersection, inferentially confident that he had time to cross the highway. Garza stated that he never looked back. At the only time that Garza saw Casey's truck, Casey was not in a position of peril. When the facts later developed to where Casey was in a position of peril, the Garza truck was already crossing the intersection. Garza was not looking at Casey or contemplating a collision. Appellant argues that at one point in the testimony, Garza answered a hypothetical question favorable to appellants' contention that he discovered plaintiff's perilous position. The question put to Garza was: "How long it would take a truck going at 60 miles per hour, to stop?" Garza stated: "I don't think he got enough chance to stop." The asserted facts that if Garza had been looking, and if he had been paying attention, and if he had realized the danger, he could have stopped and avoided the accident, do not establish that necessary

quantum of proof that Garza actually discovered Casey, realized his perilous position at a time in which he could have averted the accident. We have considered all of the evidence that could be considered favorable to the appellants' contentions and find that there is no evidence of each and every element of all of the discovered peril issues that are necessary to submit to the jury. Appellants' first point of error is overruled.

■ Appellants, in their second point of error, complain that the trial court erred in allowing the defendant to introduce speculative testimony based upon projected time sequences and speeds of the two trucks in question, without any evidence to support such hypothetical opinion testimony. More specifically, appellants contend that Mr. Flanagan (an expert witness), in making his calculations, assumed the fact that the Casey vehicle at one point was traveling 70 miles per hour down U.S. Highway 77; that the Barkley vehicle was moving two miles per hour through the stop sign and gradually accelerated from two to six miles per hour with an average speed of four miles per hour; and that the coefficient of friction of the highway at the scene of the accident was .8, for all of which there was no evidence to support the question. First, as to appellants' complaint concerning Flanagan's use of .8 as the coefficient of friction, the same is completely without merit. Flanagan was asked what his opinion was as to the approximate coefficient of friction at a point on U.S. Highway 77 northbound leading up to the intersection with Farm Road 70. He agreed that .7 or .8 would be right in that area, "preferably .8".

Flanagan was asked to make certain calculations as to the total braking distance of the Casey vehicle using various speeds which included 70 miles per hour, together with a reaction time of ¾ths second. He was asked to make the same calculations using speeds of 48 miles per hour and 60 miles per hour which exact speeds were in . evidence. The record reflects that Garza had testified that when he first saw Casey, Casey's vehicle was traveling better than sixty miles per hour, thus, the speed of 70 miles per hour was properly inferred from such testimony and the other evidence.

Next, Flanagan was asked to determine the number of seconds it took the Barkley vehicle to travel from the stop sign to the point of impact, a distance of 97 feet, assuming Garza left the stop sign traveling at approximately two miles per hour with a steady rate of acceleration over the 97 foot distance to the point of impact at which point he reached a speed of approximately 6 miles per hour. Flanagan answered that it would take 16.4 seconds. During that interval of time Flanagan stated that Casey's vehicle would be 1,140 feet back from the point of impact, assuming a constant speed of 48 miles per hour; 1,446 feet back assuming a constant speed of 60 miles per hour; and 1,688 feet back assuming a speed of 70 miles per hour. Appellants argue that there was absolutely no evidence in the entire record that Garza was moving two (2) miles per hour at the time he passed the stop sign or that he gradually accelerated from two (2) to six (6) miles per hour.

Although there was no specific testimony that Garza traveled through the stop sign at approximately two miles per hour, there was evidence from which that fact could reasonably be inferred. Garza testified that the maximum speed that he had reached while traveling on Farm Road 70 between the stop sign at the intersection of U.S. Highway 77 (southbound) and the stop sign located at the intersection of U.S. Highway 77 (northbound) was five or six miles per hour, but that he had slowed down before he reached the second stop sign. Upon reaching the stop sign, Garza testified as follows:

"Q Now, did you stop at this stop sign?

A Well, not exactly, though, but it was just barely, just like I told you awhile ago, those *wheels was just barely turning a little.*

Q You rolled through it, is that what you say, it slowly rolled through it, is that fair?

A   Well, you can say that.

Q   Okay. So you didn't stop at that sign?

A   Well, just barely stopped, but, you know, you just—your wheels just barely was turning there.

Q   Okay. You had slowed down, but not to a complete stop, is that what you are saying?

A   Right."

Garza also testified that at some point along Farm Road 70 before coming to the stop sign (a point which is unclear in the record), he was traveling at 3 miles per hour. Finally, Garza testified that he gained more speed as he passed through the intersection to the point that he was not going over 5 or 6 miles per hour when the accident occurred. From these facts proved, it was reasonable to infer (in the hypothetical question) that Garza was traveling approximately 2 miles per hour at the time he passed through the stop sign into the intersection and that he gradually accelerated from 2 to 6 miles per hour.

The trial court in ruling on the propriety of a hypothetical question has "considerable latitude" in determining whether it is based upon a fair assumption of facts in evidence. *Burns v. Bridge Engineering Corporation,* 465 S.W.2d 427 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.); *Foreman v. Texas Employers' Ins. Ass'n,* 150 Tex. 468, 241 S.W.2d 977 (1951). It is not necessary to the propriety of such a question that it include a reference to all of the relevant facts in evidence nor that it be confined to exact facts proven with mathematical certainty. It may include inferences reasonably drawn from other facts proved which are consistent with the theory of the party propounding the question. *Burns v. Bridge Engineering Corporation,* supra; *Aetna Casualty & Surety Company v. Scruggs,* 413 S.W.2d 416 (Tex.Civ.App.—Corpus Christi 1967, no writ); *Buchanan v. Central Freight Lines, Inc.,* 462 S.W.2d 391 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). See also *Pan American Fire & Casualty Company v. Reed,* 436 S.W.2d 561 (Tex. Civ.App.—Amarillo 1969, writ ref'd n. r. e.); *Texas Employers' Ins. Ass'n v. Lovett,* 19 S.W.2d 397 (Tex.Civ.App.—Austin 1929, writ ref'd); *Texas Employers' Ins. Ass'n v. Frazier,* 259 S.W.2d 242 (Tex.Civ.App.—Eastland 1953, writ ref'd n. r. e.); McCormick and Ray, Texas Practice, Evidence Vol. 2, § 1403. Appellants' point is overruled.

There is still another reason appellants' second point of error is without merit. Buried in their motion for new trial is appellants' twenty-second general complaint that the trial court erred. It stated:

"That the Court erred in allowing the witness, Jim Flanagan, to speculate on projected time sequences and speeds of the two trucks without any evidence to support this hypothetical opinion testimony."

Appellant specifically asserts here that there was no evidence in the record: 1) that Casey was traveling 70 miles per hour; 2) that the Barkley vehicle moved through the stop sign at approximately two miles per hour gradually accelerating to six miles per hour at the point of impact; 3) that the coefficient of friction at the scene of the accident was .8.

Generally, appellants complain of the testimony of James Flanagan in their motion for new trial. The appellants do not set out distinctly the specific error complained of, nor the facts which allegedly are not supported by the evidence. They state generally it was error to allow this witness to give his opinion without *any evidence* to support it.

Our Rules of Civil Procedure and the cases decided thereunder make it clear that appellants' second point of error is insufficient. Rule 320, T.R.C.P., provides that a motion for new trial shall specify each ground on which it is founded, and that grounds not specified shall not be considered. Rule 321, T.R.C.P., provides that each ground of error in a motion for new

trial shall refer to that part of the ruling of the court or other matters complained of, ". . . in such way as that the point of the objection can be clearly identified and understood . . ." by the trial court. Rule 322, T.R.C.P., provides that "grounds of objections couched in general terms . . . in excluding or admitting evidence . . ., and the like—shall not be considered by the court", and Rule 374, T.R.C.P., provides that a ground of error which is not distinctly set forth in the motion for new trial shall be considered as waived.

Although Rule 1 of our Rules of Civil Procedure states that the rules are to be given a liberal interpretation, Rules 320, 321, 322 and 374 were deliberately adopted to serve a vital purpose. The requirements of particularity for assignments of error in a motion for new trial are not only for the benefit of the appellate court, but are designed to aid and benefit the trial court. The specific complaint in the motion for new trial not only lays a predicate for the appeal, but its presentation to the trial judge allows the trial court to clearly identify and understand the alleged error, so that he may be able to correct the error or grant a new trial if need be. See *Sandoval v. Rattikin*, 395 S.W.2d 889 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e., cert. denied, 385 U.S. 901, 87 S.Ct. 199, 17 L.Ed.2d 132, reh. denied, 385 U.S. 964, 87 S.Ct. 389, 17 L.Ed.2d 309); *Smith v. Brock*, 514 S.W.2d 140 (Tex.Civ.App.—Texarkana 1974, no writ); *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960); *Frobese v. Anderson*, 487 S.W.2d 818 (Tex.Civ.App.—Texarkana 1972, writ granted, mandamus overruled); *Roberts v. K–Mart Foods, Inc.*, 470 S.W.2d 751 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.). The assignment of error did not set out the ruling or action of the court in such a way that the point of objection could have been clearly identified and understood by the trial court. The assignment of error did not comply with the rules and thus did not afford the trial court a fair

opportunity to consider and correct the error, if any.

■ Moreover, assuming as we may, that even if it were error on the part of the trial court to allow such testimony into the record, appellants have not shown that such error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434, T.R.C.P. Appellants had the burden of showing, not only that the evidence was erroneously admitted, but that it influenced the jury to make findings that they would not otherwise have made on the issues of Casey's lookout, speed and application of brakes and proximate cause. This they failed to do. This is particularly true in view of the fact that plaintiffs failed to raise their objections until after several computations had been made that used the facts complained of.

■ In their last three points of error, appellants complain of the jury's answers to the special issues inquiring as to the lookout kept by plaintiff, the rate of speed at which plaintiff was driving, and about his application of brakes. The jury had answered each of these issues against the plaintiff. The plaintiff complains that the answers to the special issues are against the great weight and preponderance of the evidence and there is insufficient evidence to support such answers. These points of error require us to review and weigh all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

With respect to the collision here involved appellant, who had the right of way, had the duty to keep a proper lookout for the Garza vehicle which was entering the intersection. His failure to do so is negligence. But such negligence was a proximate cause of the occurrence in question only if such lookout would have revealed something which would have alerted him to the danger of a collision at a time when he was a sufficient distance from the point of colli-

sion (considering the speed he was going) that he could have taken evasive action which would have avoided the accident. *Pittman v. Licerio,* 496 S.W.2d 676 (Tex.Civ. App.—Corpus Christi 1973, no writ); *Bodine v. Welder's Equipment Company,* 520 S.W.2d 407 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

The evidence, together with all the photographs in evidence, shows that there was no obstruction along U.S. Highway 77 northbound which would have prevented Casey from seeing Garza as he rolled through the stop sign into the intersection. The Barkley vehicle was struck on the right side of the rear portion of the trailer. The Barkley vehicle was approximately 51 feet in length. Only the rear third of the trailer was struck as it was crossing through the intersection.

Casey testified that the first time he saw the Barkley vehicle was when he (Casey) was passing a junction sign which was approximately 630 feet from the intersection. Casey testified that he was traveling at 48 miles per hour as he approached the intersection. Casey further testified that the next time he glanced over at the Barkley vehicle, it looked as if it were slowing down to a stop. He then looked away to his right and never looked back again until he heard the sound of jamming gears ahead of him at which time he saw the Barkley vehicle. Casey testified he did not apply the emergency stop nor did he put the brakes on as hard as he could. It was undisputed that there were no skid marks leading up to the point of impact for either vehicle.

The expert witness Flanagan gave his opinion as to certain braking distances in which it would take the Casey vehicle to come to a complete stop. In determining such distances, Flanagan used a coefficient of friction of .8 and reaction time of ¾ths of a second. Flanagan testified that the braking distance (including reaction time) of the Casey vehicle traveling at 48 miles an hour would be 159 feet; at 60 miles an hour 235 feet; and at 70 miles an hour 307 feet.

It was shown by the evidence that the distance from the stop sign to the point of impact was 97 feet. Thus, the front end of the Barkley vehicle had traveled 97 feet from the stop sign at Farm Road 70 to the point of impact. Flanagan was then asked to determine the number of seconds it would take the Barkley vehicle to travel the 97 feet from the stop sign to the point of impact assuming Garza began at 2 miles per hour, steadily increasing his rate of speed to 6 miles per hour at the point of impact, to which he replied, 16.4 seconds. Using this information Flanagan was then able to calculate where the Casey vehicle was 16.4 seconds before the point of impact using various speeds. He stated it would be 1,148 feet back from point of impact if Casey were traveling at 48 miles per hour; 1,446 feet away at 60 miles per hour; and 1,688 feet away at 70 miles per hour. In each of these instances, had Casey kept a proper lookout and had he reacted, he would have had sufficient space to stop his vehicle within any of the above distances, and thus could have avoided the collision.

Next, Flanagan was asked to determine how many seconds it would take the front of Garza's truck to travel from the stop sign to a point of 60 feet from such stop sign which would be the west edge of the lane in which Casey was traveling, assuming a steady acceleration of 2 to 6 miles per hour over the 97 feet distance from the stop sign to the point of impact, to which Flanagan answered 7.7 seconds. Using the 7.7 seconds, Flanagan testified that the Casey vehicle, assuming the same constant rate of speed of 48 miles per hour, was 539 feet back from the point of impact. This again would allow Casey sufficient distance to react and brake so as to avoid a collision, had he kept a proper lookout and applied his brakes. It should also be noted here that it was the rear of Garza's 59 foot vehicle that was struck by Casey, thus, Garza had made it almost all the way across the intersection before being struck.

Flanagan, disputing both Garza's and plaintiff's (Casey's) recollection of how the

accident occurred, had his own opinion as to the circumstances of the collision. He testified that from all the evidence and photos, be believed the speed of the Garza vehicle at the time of the collision was 15 miles per hour with Casey having reduced his speed to 24 miles per hour at the time of impact from 48 miles per hour. He was then asked to determine the number of seconds it took Garza, traveling at a constant speed of 15 miles per hour to travel the 97 feet from the stop sign to the point of impact, to which he answered 4.4 seconds. Flanagan then testified that assuming Casey was traveling 48 miles per hour, and reduced his speed to 24 miles per hour at the time of impact (average speed 36 m. p. h. or 52.853 feet per second), Casey's vehicle was 232.2 feet back when Garza's truck left the stop sign.

Even at the 232 feet distance, assuming a speed of 48 miles per hour and reaction time of ¾ths second, Casey could have braked his vehicle to a complete stop in 159 feet. This was sufficient distance to have avoided the collision. Plaintiff's attorney even asked Flanagan to assume a one second perception time in addition to the 106 feet braking distance and 53 feet reaction time. Flanagan testified Casey would have gone 70 feet in that one second and when added to the 106 feet braking distance and 53 feet reaction distance, it appears that it would have taken a total of 229 feet for the Casey vehicle to come to a stop. This was even three feet short of the point of impact. Using plaintiff's version of the circumstances surrounding the collision, had Casey been keeping a proper lookout and had properly applied his brakes, the collision could have been avoided.

At whatever speed appellant was traveling whether it be 70, 60, or 48 miles per hour, there was ample time and distance for him to have taken evasive action which would have prevented the collision. When all the evidence is considered and weighed, together with all inferences that can reasonably be drawn therefrom, both in support of and contrary to the jury's findings,

we are of the opinion and so hold that the findings of the jury were not against the great weight and preponderance of the evidence so as to be manifestly wrong and unjust. Appellants' points of error numbers 3, 4, and 5 are overruled.

The judgment of the trial court is affirmed.